PETERS *et ux. v.* GOETZ *et al.* DAVIS *v.* CONTINENTAL
INS. CO. *et al.* SAME *v.* FIDELITY UNDERWRITERS.

(*Knoxville.*    September Term, 1916.)

1. **ASSIGNMENTS.  Notice to debtor.  Necessity.**

That an assignment of a chose in action shall vest legal title in
the assignee, notice to the debtor is necessary. (*Post, pp.* 260-
262.)

Cases cited and approved:  Miller v. O'Bannon, 72 Tenn., 398;
Flickey v. Loney, 63 Tenn., 169; Dews v. Olwill, 62 Tenn., 432;
Lanbreth v. Clarke, 57 Tenn., 32; Daniels v. Pratt, 74 Tenn.,
443; Robertson v. Baker, 78 Tenn., 300; Dillingham v. Insur-
ance Co., 120 Tenn., 302.

Case cited and distinguished:   Clodfelter v. Cox, 33 Tenn., 330.

2. **ASSIGNMENTS.  Equitable right and legal title.  Burden of
proof.**

As between successive assignees of a chose in action, the second
only having given notice to the debtor, and so having the legal
title, the first has the burden of showing reason why this
should be postponed to his superior equity, as that the legal
title was taken with knowledge of the prior equity. (*Post,
pp.* 262-264.)

Cases cited and approved:   Timpson v. Ramsbottom, 2 King,
35;  Meux v. Bell, 1 Hare, 73.

3. **ASSIGNMENTS.  Notice to debtor.  Assignments of parts of
debt.**

That successive assignments by a creditor are of parts only of the
debt does not change the rule as to necessity of notice to the
debtor, or burden of proof between the one not giving notice
and the one giving it. (*Post, p.* 264.)

Case cited and approved:  Pierce v. Allison, 59 S. W., 193.

4. **ASSIGNMENTS.  Notice.  Parties.  Payment into Court.**

Notice of an assignment must be given the debtor, and, though
he pays the fund into court, notice to the clerk and master is
insufficient. (*Post, pp.* 264, 265.)

136 Tenn.—17

FROM KNOX.

Appeal from the Chancery Court of Knox County. —WILL D. WRIGHT, Chancellor.

CATES & PRICE, for M. C. Monday.

NOBLE SMITHSON and J. W. SAYLOR, for S. P. Welch, T. B. Ault, Lee Sterchi, and J. T. Witt.

JOHNSON & COX, for J. F. Moore.

MR. JUSTICE LANSDEN* delivered the opinion of the Court.

The questions for decision in this case arise upon the petitions of T. B. Ault, J. T. Witt, S. P. Welch, and M. C. Monday, in the above-consolidated causes.

The original bill was filed by Mr. and Mrs. Peters against Goetz to cancel a mortgage executed by them upon a certain house and lot situated in Knox county. Goetz and others filed a cross-bill to foreclose the mortgage, which was the subject of the controversy in the original bill of Peters and wife. Later Mrs. Peters, by her next friend, filed a bill against the Continental Insurance Company and the Fidelity

---

*Hon. D. L. Lansden was absent from the Court from the September term, 1914 to the September term, 1916, on account of illness, at which term he resumed his seat.

Underwriters to collect policies of insurance issued upon the same property to cover loss by fire which had been sustained after the filing of the original bill. It has been adjudged by the Chancellor, from which no appeal was taken, that the mortgage was valid, and should be foreclosed. Later it was agreed that the insurance companies were liable upon the policies in issue, and, as a result of this agreement, the insurance companies paid into court $13,500 on January 30, 1915.

Prior to this time Mr. and Mrs. Peters had executed assignments upon the fund represented by the insurance policies to N. W. Hale, first, and afterwards to S. P. Welch, J. T. Witt, and T. B. Ault. The holders of these assignments filed them with the clerk and master, Welch, Ault, and Witt first, and afterwards Hale's assignee. Hale assigned his claim to the Third National Bank, and it reassigned it to M. C. Monday. Later petitions were filed by these claimants presenting the controversies arising on this appeal.

On October 14, 1914, Welch, Witt, and Ault gave notice, by registered mail, to the insurance companies notifying them that they held these assignments. Neither Monday nor any of his predecessors in ownership gave notice to the insurance companies of the assignment claimed by him.

There is no question made upon any of the assignments involving their *bona fides*.

The Chancellor held that Welch, Witt, and Ault had priority over Monday because they gave notice to the insurance companies of their assignments. The court of civil appeals reversed the decree of the Chancellor and held that Monday was enitled to priority because the other petitioners did not prove that they took their assignments subsequent in time, without notice of Monday's assignment. That court recognized the rule in this State that:

"An assignment of a chose in action is not complete, so as to vest the title absolute in the assignee, until notice of the assignment has been given to the debtor; and this is so, not only as it regards the debtor, but likewise as to third persons."

Still that court was of the opinion that before petitioners Welch, Witt, and Ault could avail themselves of the benefit of the notice which they had given to the debtor, as against Monday, they must prove that they took their assignments without notice of Monday's prior assignment.

There can be no doubt at this time of the correctness of the general rule stated above. *Clodfelter* v. *Cox,* 1 Sneed, 330, 60 Am. Dec., 157; *Miller* v. *O'-Bannon,* 4 Lea, 398; *Flickey* v. *Loney,* 4 Baxt., 169; *Dews* v. *Olwill et al.,* 3 Baxt., 432; *Lambreth* v. *Clarke,* 10 Heisk., 32; *Daniels* v. *Pratt,* 6 Lea, 443; *Robertson* v. *Baker*, 10 Lea, 300; *Dillingham* v. *Insurance Co.,* 120 Tenn., 302, 108 S. W., 1148, 16 L. R. A., (N. S.) 220.

In all of the foregoing cases, the rule is stated in substance as held by the court of civil appeals, and it will be observed that the cases are to be found among our reports from 1 Sneed to 120 Tennessee. It is one subject upon which the judges of this court have seemed not to differ.

The leading case is *Clodfelter* v. *Cox,* supra. That case recognized that there is an irreconcilable conflict of authority upon the subject, and the learned judge writing the opinion stated that the weight of American authority seemed to him to be:

"That the assignment of a chose in action is complete in itself, and vests a perfect title in the assignee, as against third persons, without notice of the assignment to the debtor."

But notwithstanding this weight of American authority, the court adopted the rule of the English. This rule was adopted, not to prevent a multiplicity of suits, but because it was considered to be the more reasonable and safe, practical rule. It was said that this doctrine "furnishes a definite rule for determining between opposing equities, and places the rights of the assignee of a chose in action upon a footing of security altogether unattainable under the opposite rule." To support the opinion, the court cited White & Tudor's Leading Cases.

Applying the principle announced in that and subsequent cases to the case in hand, we find that, while Monday procured the first assignment, he did not give notice to the debtor, and that Welch, Witt,

and Ault, although having an assignment subsequent in date to that of Monday, gave notice to the debtor. It is without question the law that they, by virtue of the notice given to the debtor, acquired the prior legal title to the funds upon which the assignments were drawn. Nothing else appearing, they would be entitled to priority over Monday who has a mere equity.

The court of appeals was of the opinion that, notwithstanding they were the holders of the legal title, Welch, Witt, and Ault should have proven that they took and paid for their assignments without notice of Monday's prior assignment. We think this was error. Having perfected their title to the funds assigned to them by giving the notice, it was not necessary that they should do more. The burden was plainly upon Monday to show that the apparent legal title of Welch, Witt and Ault should be postponed to his superior equity. This is elementary.

The court of civil appeals quotes at length from Ruling Case Law to support its opinion to the effect that, where several conflicting equitable assignments have been made of the same chose in action, and there is no intrinsic superiority of one above another, the order of time of the execution of the assignment determines the order of priority.

"But where a subsequent assignee has acquired the legal title for a valuable consideration, and without notice of a prior equitable assignment, he is usually protected, and as between several *bona fide* pur-

Peters et al. v. Goetz.

chasers for value or assignees of a chose in action, that one is entitled to preference who first perfects his assignment by giving notice to the debtor, and the priorities of such successive assignees will take effect from the time when they give notice to the debtor, and not from the date of execution.    In    order that the general rule regulating the rights of successive assignees according to priority of notice should have application, it is necessary that the second assignee at the time he received his assignment should be without notice of the  prior  assignment.'' Ruling Case Law, vol. 2, section 37; Am. & Eng., Ency. of Law (2d Ed.), vol. 2, p. 1077; C. J. vol. 5 section 140, p. 956; *In re Phillips,* 205 Pa., 515, 55 Atl., 213, 66 L. R. A., 761, 97 Am. St. Rep., 746.

We do not think the quotation made and the authorities cited sustain the conclusion of the court of civil appeals. The general principle of law stated to the effect that one receiving a subsequent assignment, with notice of the existence of a prior assignment, will be postponed to the prior equity of the first holder, is not doubted. But the precise question decided by that court was that upon a showing of a prior assignment without notice to the debtor, and subsequent assignments with notice to the debtor, and no proof of notice by the subsequent assignees of the existence of the prior assignment, the court would presume that the subsequent assignees had such notice, and therefore defeat  their  prior  legal right. The true rule is that, where one is asserting an

equity against a legal right, the burden is upon him to show that the one holding the legal title is postponed to his imperfect right because of some reason which courts of equity recognize. If the reason is that the one having the legal title took it with knowledge of the prior equity, that must be proven. *Timpson* v. *Ramsbottom,* 2 King, 35; *Meux* v. *Bell,* 1 Hare, 73.

Learned counsel for Monday have filed a petition for *certiorari* in which it is asserted that the court of civil appeals committed error in not holding that the various assignments involved here are partial equitable assignments of a fund, and it is asserted that a distinction exists between such a case and the authorities cited above.

*Pierce* v. *Allison,* 59 S. W., 193, is relied upon as sustaining this position. It is sufficient to say of that case that no question of notice was involved or discussed by the learned judge who wrote the opinion, and we are not able to see any sound distinction existing between assignments of a part of a fund, or a chose in action, and assignments of the whole, especially when the reasons which actuated the court for adopting the English rule as against acknowledged weight of American authority are remembered. We are not inclined to ingraft a new doctrine upon the plain rule that has previously prevailed in this State.

It is also said that the notice, if required at all, should have been given to the clerk and master and

not to the debtor. All of our cases hold that the notice must be given to the debtor, and in *Clodfelter* v. *Cox,* and *Daniels* v. *Pratt,* supra, orders were entered upon the minutes of the court setting forth the assignment, and these were held to be insufficient.

It results that the decree of the court of civil appeals is reversed, and that of the Chancellor is affirmed.