**UNION LIVESTOCK YARDS, INC.,
Plaintiff-Appellant,**

**v.**

**MERRILL LYNCH, PIERCE, FENNER &
SMITH, INC., Paine, Webber, Jackson &
Curtis, Inc., and Cas and Virginia Walker, Defendants-Appellees.**

Court of Appeals of Tennessee,
Eastern Section.

Dec. 29, 1976.

Certiorari Denied by Supreme Court
May 31, 1977.

George F. Legg, Knoxville, for plaintiff-appellant.

Robert R. Campbell, Ronald C. Koksal, Knoxville, for defendants-appellees.

W. P. Boone Dougherty, Knoxville, for Cas and Virginia Walker.

## OPINION

ROSS W. DYER, Special Judge.

In this opinion Union Livestock Yards, Inc. will be referred to as Appellant; Merrill Lynch, Pierce, Fenner and Smith, Inc. and Paine, Webber, Jackson & Curtis, Inc. as Appellees; and Cas and Virginia Walker as the Walkers.

Appellant appeals from a judgment entered against it by grant of motion for summary judgment by the Appellees and the Walkers.

On January 1, 1974, the Walkers entered into a written agreement with one Lambert, whereby the Walkers agreed to pay Lambert a portion of certain continuing royalty payments arising from the use of a rock quarry in Blount County, Tennessee. On November 26, 1974, by written agreement, Lambert assigned these royalties to Appellant. On January 27, 1975, the Appellees secured a judgment against Lambert in the United States District Court for the Eastern District of Tennessee and, on or about May 29, 1975, to satisfy said judgment had garnishments served upon the Walkers to reach any property in the possession of the Walkers belonging to Lambert. The Walkers answered the garnishments paying the royalties, arising from the agreement of January 1, 1974, due Lambert to the Appellees.

Prior to the levy of the garnishment upon the Walkers the Appellees had knowledge of the assignment of these royalties by Lambert to Appellant, although this assignment had not been recorded in Blount or any other county in Tennessee. Prior to the levy of the garnishment upon the Walkers the Walkers had no notice or knowledge of the assignment of these royalties by Lambert to Appellant.

On October 13, 1975, Appellant filed its complaint in this cause against the Appellees and the Walkers claiming by virtue of the assignment of November 26, 1974, Appellant, as to these royalties, had priority over Appellees who were in fact judgment creditors with knowledge of the assignment of November 26, 1974, prior to the levy of the garnishment upon the Walkers.

Appellant assigns errors as follows:

1. The Court erred in accepting and considering on the day of the hearing of motions for summary judgment Appellees sole affidavit in support of their motions, as the affidavit was not filed together with the motions for thirty (30) days before time for a hearing.

2. The Court erred in granting summary judgment for the following reasons:

    a. The issue of whether the assignment from Lambert to Appellant was an assignment intended for security presented a material question of fact.

b. The Court wrongfully concluded, that as a matter of law, a judgment creditor, having issued garnishment on a debt in the hands of another with knowledge of a prior assignment of the debt, takes priority over a prior assignee of the same debt.

■ Under the first assignment of error to remove a problem it should be noted the motion for summary judgment was filed more than thirty days prior to the hearing thereon. The error alleged is to the action of the Chancellor in allowing and considering an affidavit in support of the motion filed on the day of the hearing. Appellant relies upon the recent case of *Craven v. Lawson*, 534 S.W.2d 653 (Tenn.1976) and Rule 6.04(2), Tennessee Rules of Civil Procedure which reads in pertinent part as follows:

> When a motion is supported by affidavit, the affidavit shall be served with the motion; . . .

In the *Craven* case the court construed the word "shall" in Rule 56.03 TRCP as a mandatory requirement in the context therein used as opposed to a discretionary requirement. Appellant argues the word "shall" as used in Rule 6.04(2) TRCP should be likewise construed as a mandatory requirement, that is, an affidavit filed in support of a motion for summary judgment has to be filed with the motion. We agree with this argument but the court in *Craven* also stated as follows:

> In this case the facts as pleaded, bearing on the issue made on defendant's summary judgment motion are undisputed and the question presented is one of law only. In the interest of the orderly and expeditious disposition of litigation and to serve the manifest interest of the parties in this case we must finally decide that legal issue on this appeal, the effect of which is to render harmless the error of the trial judge. However, it should be apparent that where there is the slightest possibility that the party opposing the motion for summary judgment has been denied the opportunity to file affidavits, take discovery depositions or amend, by

the disposition of a motion for summary judgment without a thirty (30) day interval following the filing of the motion, it will be necessary to remand the case to cure such error. 534 S.W.2d 655.

The purpose of the affidavit filed on the date of the hearing was to affirm that the Walkers had no knowledge or notice of the assignment of these royalties from Lambert to Appellant prior to the service of the garnishment on the Walkers. Appellant makes no claim it has been prejudiced by this late affidavit or has been denied in any way an opportunity to counter same. To reverse on this assignment would serve the interest of neither party and in fact impede the disposition of the litigation for no purpose. The error is harmless and is overruled.

■ Under the second assignment of error (part b) the landmark case of *Clodfelter v. Cox*, 33 Tenn. 330 (1853), is cited. In this case the court said:

> . . . The weight of American authority seems to be that the assignment of a *chose in action* is complete in itself, and vests a perfect title in the assignee, as against third persons, without notice of the assignment to the debtor. But the contrary of this is the settled doctrine of the English, as well as of some of the courts of this country, at the present day. The latter we consider as the more reasonable and safe practical rule, and have accordingly held, on more than one occasion, that the assignment of a *chose in action* is not complete, so as to vest the title absolutely in the assignee, until notice of the assignment to the debtor; and this not only as regards the debtor, but likewise as to third persons. And, therefore, as between successive purchasers or assignees of a *chose in action*, he is entitled to preference who first gives notice to the debtor, although his assignment be subsequent to that of the other. To perfect the assignment, not merely as against the debtor, but also as against creditors and subsequent *bona-fide* purchasers, notice must be given. Hence it follows that an attachment by a creditor,

in the period intervening between the assignment and the notice, will have preference.

This doctrine furnishes a definite rule for determining between opposing equities; and places the rights of the assignee of a *chose in action* upon a footing of security altogether unattainable under the opposite rule. 33 Tenn. 339.

This rule in *Clodfelter* has been followed in subsequent Tennessee cases. *Lambreth v. Clarke*, 57 Tenn. 32 (1872); *Dews v. Olwill*, 62 Tenn. 432 (1874); *Flickey v. Loney*, 63 Tenn. 169 (1874); *Miller v. O'Bannon*, 72 Tenn. 398 (1880); *Daniels v. Pratt*, 74 Tenn. 443 (1880); *Robertson v. Baker*, 78 Tenn. 300 (1882); *Dillingham v. Traders' Ins. Co.*, 120 Tenn. 302, 108 S.W. 1148 (1907).

Appellant does not argue with the rule announced in *Clodfelter*, but raises the issue that the fact Appellees had knowledge of the assignment to Appellant by Lambert on November 26, 1974, prior to the levy of the garnishment on the Walkers on or about May 29, 1975, gives rise to priority in favor of Appellant.

In the *Clodfelter* case and those cases cited where the rule has been followed all involve a contest as to priority between an assignee and a garnishing or attaching creditor with each seeking the same fund. In none of these cases was knowledge on the part of the creditor, as to a prior assignment, made an issue.

We have not been cited nor by research found a case we deem to be directly in point on this issue in the case at bar.

Appellant cites *Haynes v. Gates, et al.*, 39 Tenn. 598 (1859). In the *Haynes* case William Croom gave certain notes to McElrath, an attorney, for collection on March 28, 1855. Then on April 2, 1855, Croom sold and assigned these notes to Haynes. On March 9, 1857, Gates, a judgment creditor of Croom, had a garnishment served on McElrath to reach the funds in his hands from the collection of these notes, which funds, under this garnishment, McElrath had paid to Gates. Haynes filed the bill in this cause to recover these funds from Gates on the ground they had been paid out under color of a void judgment obtained in a justice of the peace court. The court found in favor of the assignee Haynes on the ground the judgment obtained by Gates against Croom, from which the garnishment issued, was void.

Appellant does not rely upon the holding in *Haynes* but upon the last two paragraphs in the opinion, which we consider to be dictum, which paragraphs are as follows:

But even if the judgment were valid, the defendant, Gates could not, under the circumstances of this case, resist the decree sought against him. It is sufficiently established, by the allegation of the bill and the admission of the answer, that very shortly before taking out the process of garnishment, the defendant, Gates, acquired information from a conversation with the complainant [Haynes], of the funds in the hands of McElrath; and that complainant [Haynes] claimed said fund as belonging to him, by purchase from Croom.

With knowledge of this fact, thus acquired, as appears from the record, Gates resorted to the proceeding before mentioned, in order to appropriate the fund to the satisfaction of his demand against Croom and Russell. This he cannot be permitted to do. It would be, in the view of a Court of Equity, a manifest fraud on the rights of the complainant [Haynes]. *The money belonged to the complainant [Haynes]; Croom had no claim to it, and no creditor of his had any right, under color of legal process, or otherwise to possess himself of it.* And in doing so, the defendant, Gates, must be regarded, in equity, as having received it, and as holding it as the money of the complainant [Haynes]. He is, therefore, clearly liable to refund it. *And the result would, perhaps, be the same, even though he had obtained possession of the money in ignorance of the fact that it belonged to the complainant [Haynes].* 39 Tenn. 602. (Emphasis supplied.)

Under the above language from *Haynes* the Appellant argues even though the *Clodfelter* rule may be asserted as a general

principle of law this language from *Haynes* has grafted an exception to the *Clodfelter* rule to the effect that equity will not permit a garnishing creditor to pre-empt a prior assignee of a fund when the creditor is charged with knowledge of the assignment.

In light of the facts in the *Haynes* case, the decision reached, and the fact the same member of the Court writing the *Haynes* opinion had six years previously written the *Clodfelter* opinion, we find the language above copied difficult to understand.

The language italicized above to the effect that "the money belonged to Haynes" and "perhaps the result would be the same even if Gates had no knowledge the money belonged to Haynes" may arise from another fact the court noted in its opinion; that prior to the service of the garnishment on McElrath, he [McElrath] had notice of the assignment to Haynes, which under the *Clodfelter* rule would perfect Haynes assignment placing the title in Haynes; that is, the money belonged to Haynes, which would be true whether Gates had knowledge of the assignment or not.

In dissecting the *Haynes* opinion, as applicable to the issue in the case at bar, we need to keep in mind the thrust of the original bill in *Haynes* was to obtain the fund from Gates on the ground Gates had received the fund upon a void judgment; and upon this issue the Court made its decision. Upon this issue the *Clodfelter* rule would not be at issue.

The Appellant also cites the case of *Peters v. Goetz*, 136 Tenn. 257, 188 S.W. 1144 (1916) which deals with two assignees seeking the same fund in a situation where the second assignee filed notice with the debtor but the first assignee did not. The court under the *Clodfelter* rule held the second assignee had priority by perfecting his assignment in giving notice to the debtor.

The Appellant does not rely upon the holding of the Court in *Peters* but upon the following language used by the writer in that opinion:

" . . . as between several *bona fide* purchasers for value or assignees of a chose in action, that one is entitled to preference who first perfects his assignment by giving notice to the debtor, and the priorities of such successive assignees will take effect from the time when they give notice to the debtor, and not from the date of execution. In order that the general rule regulating the rights of successive assignees according to priority of notice should have application, it is necessary that the second assignee at the time he received his assignment should be without notice of the prior assignment." 136 Tenn. 262–263, 188 S.W. 1146.

The Appellant argues this language in *Peters* recognizes the fact equities are not equal where a subsequent assignee obtained his assignment with notice of a prior assignment. We agree this language imports such a conclusion, but it is not a holding of the court on this point and because it is not necessary to the decision, is dictum. In *Peters* the court at the outset noted, "There is no question made upon any of the assignments involving their *bona fides*," which is to say the second assignee purchased for value without notice of a prior equity which would remove the issue of notice by the second assignee of a prior assignment.

Appellees cite *Miller v. O'Bannon*, 72 Tenn. 398 (1880) and *Penniman & Bro. v. Smith*, 73 Tenn. 130 (1880), for the proposition that attaching creditors are treated differently from subsequent assignees. These cases do state that in a contest between creditors of a common debtor it is a question of diligence, not of equity, and the creditor who first perfects his right by notice to the debtor must prevail; but in neither of these cases was knowledge of a prior assignment by the attaching creditor made an issue.

The decision here involves the balancing of equities between two parties, each in fact having a lawful claim on the same fund, which is what the court did in announcing, in *Clodfelter*, the rule to be followed in such cases. The capstone of the *Clodfelter* rule, as to an assignee of a chose in action, is to give notice to the debtor

which action places title in the assignee good against third persons including subsequent assignees and creditors.

We can see without so deciding (such not being necessary to a decision in the case at bar) where an exception, so to speak, might be grafted on the *Clodfelter* rule in a situation involving a first and subsequent assignee, where the subsequent assignee purchased with notice of an existing first assignment. In such a situation equity could require the subsequent assignee's rights be postponed to the rights of the first assignee, even though the subsequent assignee perfected his assignment by giving notice to the debtor and the first assignee did not. The equitable point is that the second assignee purchased with his eyes open, that is, he is not a *bona fide* holder. The situation of a creditor is different.

Dissecting the *Clodfelter* rule as to the part most pertinent to the decision in the case at bar, we find:

> . . . To perfect the assignment, not merely as against the debtor, but also as against creditors . . . , notice must be given. Hence it follows that an attachment by a creditor, in the period intervening between the assignment and the notice, will have preference. 33 Tenn. 339.

This language is in no way ambiguous. It is clear and subject to only one interpretation. We know of no logical reason to graft thereon an exception where the creditor had knowledge of a prior un-perfected assignment prior to perfecting his claim by service of a garnishment.

We hold the Appellees, by serving its garnishment prior to Appellant perfecting its assignment by notice to the Walkers, had priority. Such works no inequity on Appellant since it had six months to perfect its assignment.

Under the second assignment of error (part b) the Appellant argues that a summary judgment is inappropriate because a material question of fact is presented—was its assignment from Lambert intended as a security instrument? In support of this assignment Appellant cites T.C.A. Sec. 47-9-301 and alleges this statute prohibits a lien creditor from taking a priority over a creditor with an unperfected security interest where the lien creditor is shown to have knowledge of the security interest at the time he attains the status of a lien creditor.

Under this record the funds in the hands of the Walkers were received as royalties and/or rent payments arising from a lease on a rock quarry. T.C.A. Sec. 47-9-104 states that Chapter Nine does not apply "to the creation or transfer of an interest in . . . real estate, including a lease or rents thereunder." Accordingly the funds in the hands of the Walkers would not be subject to Title 47, Chapter 9 of T.C.A.

It results all assignments of error are overruled. The judgment of the trial court is affirmed and the costs in this court payable by Appellant.

PARROTT, P. J. (E.S.), GODDARD, J., concur.