355 So.2d 171 (1978)
Nell RUCKER and the Federal Land Bank of Columbia, Appellants (Defendants),
v.
STATE EXCHANGE BANK, a Florida Banking Corporation, Appellee (Plaintiff).
No. CC-195.
District Court of Appeal of Florida, First District.
February 14, 1978.
Rehearing Denied March 14, 1978.
*172 Frank M. Gafford, Lake City, for appellants.
Edwin B. Browning, Jr., of Davis, Browning & Hardee, Madison, W. Roderick Bowdoin of Jopling, Darby, Peele, Page & Bowdoin, Lake City, Randell H. Rowe, Jr., Madison, Ray L. Lilley, for appellee.
MILLS, Acting Chief Judge.
The issue raised by this appeal is whether a real estate mortgage securing a promissory note becomes a secured transaction under Article 9 of the Uniform Commercial Code when it is assigned, along with the note, as collateral for a bank loan. Rucker and Land Bank contend that under Section 679.102(3), Florida Statutes (1975), it is a secured transaction. Exchange Bank contends that under Section 679.104(10), Florida Statutes (1975), it is not a secured transaction.
Rucker and Land Bank appeal from a judgment foreclosing a real estate mortgage on land owned by Rucker and assigned by the mortgagee, Harrell, along with the note it secured, to Exchange Bank as collateral for loans made by Exchange Bank to Harrell. If the contention of Rucker and Land Bank is correct, we must reverse the judgment. If the contention of Exchange Bank is correct, we must affirm the judgment.
On 17 April 1974, South 41 Corporation (South 41) purchased seventy-five acres of land from Harrell and gave Harrell a note secured by a purchase money mortgage. On 18 April, South 41 deeded the land to Rucker subject to the mortgage.
On 7 May and 9 July, Harrell obtained loans of $24,000.00 and $5,000.00 from Exchange Bank and assigned the South 41 note and mortgage to it as collateral for the loans. The Exchange Bank promptly recorded the assignment and gave notice of the assignment to South 41. It did not give notice to Rucker. It did not perfect a security interest.
On 23 July, Rucker mortgaged the land to Land Bank and paid to Harrell the entire sum due on the South 41 note and mortgage. Although Rucker obtained a satisfaction from Harrell, which she promptly recorded, she did not ascertain if the mortgage had been assigned by him nor did she demand that he surrender the mortgage to her.
On 2 January 1975, Harrell defaulted in the payment of the loans which were then due the Exchange Bank and no payment was made on the South 41 note and mortgage. The Exchange Bank brought foreclosure proceedings against Rucker based on the South 41 mortgage held by it. The trial court entered a judgment in favor of Exchange Bank; and Rucker and Land Bank appeal.
Section 679.9-102(3) provides:
"The application of this chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this chapter does not apply."
Amended Comment 4 under this section states:
"The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured *173 by a real estate mortgage. This Article leaves to other law the question of the effect on rights under the mortgage or delivery or nondelivery of the mortgage or of recording or non-recording of an assignment of the mortgagee's interest. See Section 9-104(j). But under Section 3-304(5) recording of the assignment does not of itself prevent X from holding the note in due course."
Section 679.9-104(10) provides:
"This chapter does not apply:
.....
"Except to the extent that provision is made for fixtures in § 679.313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder;"
Coogan, Kripke and Weiss state:
"The status under article 9 of the assignment of a note secured by a real estate mortgage has been widely discussed in New York and was among the subjects that the New York financial bar wanted clarified by legislation. The title companies in New York have insisted that for `mortgage warehousing'  the situation in which a mortgage banker or broker makes a real estate mortgage loan and pledges the mortgage to a bank until he finds a permanent mortgagee  not only must the note (or bond) and mortgage be delivered and the assignment of the mortgage recorded under real estate law, but a financing statement with respect to the transaction must also be filed under article 9. Insofar as we understand the argument of the title companies, it rests on two separate bases:
(a) The persons demanding clarification argue that, even though section 9-104(j) [§ 679.104(10)] excludes from the Code the transfer of an interest in or lien on real estate, the matter is not clear because of three facts: the real estate mortgage is itself personal property, presumably a general intangible; the pledge of the note is expressly brought under article 9 by section 9-102(3) [§ 679.102(3)]; and Official Comment 4 to that section specifically states that article 9 is applicable to the security interest created in the note and mortgage.
(b) Another argument is that the note and the real estate mortgage together are something more than they are separately. Just as a note and chattel mortgage together constitute a new form of collateral to which the Code applies the title `chattel paper' and for which it sets forth special rules, so the note and real estate mortgage together may constitute a `general intangible,' which is defined to include all personal property not otherwise classified. If either of the arguments is sound, a security interest in the mortgage could be perfected only by filing.
"We are satisfied that this view is unduly fearful. The clear intent of section 9-104(j) [§ 679.104(10)] to exclude transfers of liens on real estate would be completely nullified if the argument were accepted that the lien, as a form of wealth, is personal property, a security interest in which is subject to article 9. Likewise, we feel that the argument that a note and real estate collateral could, in combination, be a general intangible under the Code is inconsistent with the fact that, when the Code intended to give special status to a combination of this nature (the chattel paper case), it expressly provided for it. If the theory advanced by the title companies were sound, it would apparently drag back into the Code all the other matters excluded by section 9-104 [§ 679.104], when transferred with a note for which they were collateral. There is, in our opinion, no danger that a court could read the statute in any such fashion. Because of the express language of section 9-104(j) [§ 679.104(10)], we do not feel that Official Comment 4 to section 9-102 [§ 679.102] should cause any real confusion or doubt, but there can be no objection to a revision by the Permanent Editorial Board of the sentence that has been called into question, and we recommend this measure."
79 Harvard Law Review, 270-271.
Professor William D. Hawkland is of the opinion that the draftsmen of Article 9 did not intend to cover real property interests *174 other than fixtures [679.104(10)] but undercut this effort to some extent by [679.102(3)] illustrated by Official Comment 4. 3 Commercial Law Journal 83.
At the time Coogan, et al. and Hawkland wrote their articles, Comment 4 read as follows:
"An illustration of subsection (3) is as follows:
The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. However, when the mortgagee in turn pledges this note and mortgage to secure his own obligation to X, this Article is applicable to the security interest thus created in the note and the mortgage. Whether the transfer of the collateral for the note, i.e., the mortgagee's interest in Blackacre, requires further action (such as recording an assignment of the mortgagee's interest) is left to real estate law. See Section 9-104(j)."
Comment 4 was amended in 1966 and the 1966 Amendment is set forth above. As stated in In Re Bristol Associates, Inc., 505 F.2d 1056 (3d Cir.1974):
"The changes in wording produced two effects. First, deletion of the references to mortgages distinguishes between the pledge of a note, a separate and distinct contract, and the underlying real estate mortgage. Where a promissory note and mortgage together become the subject of a security interest, only that portion of the package unrelated to the real property is now covered by section 9-102 [§ 679.102]. Second, the added language makes explicit that the promissory note itself falls within the scope of Article 9 by virtue of its status as an instrument... ."
A broad reading of Section 679.104(10) which would exclude the real estate mortgage here from Article 9 is consistent with the views of authorities in the commercial field and is not inconsistent with the language used by the legislature.
"Where language is susceptible of two reasonable meanings, a court, in the commercial field, should choose that interpretation which comports with current universal practice in the business world." In Re Bristol Associates, Inc., supra. Generally, the banking industry in Florida does not consider real estate mortgages as covered by Article 9. Rather, it considers that its interest in a real estate mortgage is protected by recording the assignment as required by Section 701.02, Florida Statutes (1975). The recording of the assignment gives constructive notice of its interest in the mortgage to the world.
We hold, therefore, that the assignment of a real estate mortgage securing a promissory note as collateral for a bank loan is not a secured transaction under Article 9 of the Uniform Commercial Code because it is specifically excluded by Section 679.104(10).
There is good reason for doing this. If the court were to hold that a real estate mortgage assigned as collateral comes under Article 9, the status of all such mortgages would be called into question. This would generate considerable litigation. Undertaking to file all outstanding security interests in such mortgages would be time consuming and expensive. Chaos would result. We must not burden the business world with further chaos. We must not burden either the consumer or the business world with additional financial burdens.
In the case before us, as the Exchange Bank properly recorded the assignment of the mortgage from Harrell, Rucker satisfied the mortgage at her peril because she was on constructive notice of Exchange Bank's interest. In addition, when Rucker satisfied the mortgage she did not require that the mortgage be surrendered to her nor did she determine if it had been assigned by Harrell. As stated by our Supreme Court in Garrett v. Fernauld, 63 Fla. 434, 57 So. 671 (1912):
"This is not a case where one of two equally innocent parties must suffer by the act of a third person. It is a case where a purchaser of land suffers because he did not require the surrender or *175 cancellation of, or proof of the satisfaction by or from, the real owner of the mortgage obligations of which he knew, thereby causing a loss to himself. The loss was caused, ... by the failure to have the mortgage surrendered or to ascertain whether it had been assigned before its maturity."
We affirm the judgment.
SMITH and ERVIN, JJ., concur.