In re MARYVILLE SAVINGS AND LOAN CORPORATION, Debtor.

PEOPLES BANK OF POLK COUNTY, Plaintiff,

v.

John E. McDONALD, Trustee for Debtor, Defendant.

Bankruptcy No. 3–82–00387.
Adv. No. 3–82–0542.

United States Bankruptcy Court, E.D. Tennessee.

Feb. 3, 1983.

Tanner, Jahn, Atchley, Bridges & Jahn, P.C., Richard P. Jahn, Jr., Chattanooga, Tenn., for plaintiff.

Bird, Navratil & Bird, Frank B. Bird, Maryville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The applicability of Article 9 of the Uniform Commercial Code to the debtor's assignments of several deed of trust notes and corresponding deeds of trust is at issue. Plaintiff Peoples Bank of Polk County contends the assignments are excluded from the coverage of Article 9 by Tenn.Code Ann. § 47–9–104(j) (1979). In contradistinction, the defendant trustee in bankruptcy asserts the provisions of Article 9 are applicable. Citing Tenn.Code Ann. § 47–9–304(1) (1979), the trustee contends plaintiff failed to perfect its security interest in this case because it did not take possession of the notes assigned to it.

### I

The facts have been stipulated by the parties. Plaintiff Peoples Bank of Polk County (Bank), formerly known as Southern United Bank of Polk County, loaned $75,000.00 to Maryville Savings and Loan Corporation (debtor) in consideration of the debtor's execution of a "Promissory Note, Security Agreement, and Disclosure Statement," dated June 10, 1981. The debtor's note provided for payment, upon demand, of the principal sum of $75,000.00 plus interest. Debtor contemporaneously executed a "General Assignment of Promissory Notes and Trust Deeds," assigning all of its rights, title, and interest in approximately twenty deed of trust notes and corresponding deeds of trust to the Bank. This assignment was recorded on June 15, 1981, in the office of the Register of Deeds for Blount County.

Debtor subsequently made payments reducing the unpaid principal balance to approximately $55,000.00. However, the

1. The order prohibits the use of any of the funds claimed as security for the payment by the trustee in bankruptcy of administrative expenses or any other purpose, pending further order of the court.

2. The Bank implicitly maintains an assignment of a deed of trust is a writing eligible for registration. Tenn.Code Ann. § 66–24–101 (1982).

Bank extended an additional loan in the principal amount of $20,000.00 to the debtor on or about January 15, 1982. The debtor, on January 20, 1982, executed a second "General Assignment of Promissory Notes and Trust Deeds," assigning to the Bank all of its rights, title, and interest in seven additional notes and deeds of trust securing the notes. This second assignment was also recorded in the office of the Register of Deeds for Blount County, on January 28, 1982.

The majority of the deeds of trust assigned to the Bank are recorded in Blount County, but some of them are recorded in other surrounding counties. The two general assignments to the Bank were recorded only in Blount County.

The debtor filed its voluntary chapter 11 petition on March 18, 1982. The amount of the debtor's unpaid obligation to the Bank is $75,000.00 principal plus interest, no payments having been made since prior to the extension of the $20,000.00 loan. The payments against the deed of trust notes are being turned over to the trustee in bankruptcy, pursuant to an order [1] of this court entered on August 3, 1982.

The Bank did not at any time take possession of any of the controverted notes assigned to it by the debtor.

### II

Although offering several arguments to support its claim of a perfected interest, the fundamental argument of the Bank is bipartite: (1) Article 9 of the Uniform Commercial Code is inapplicable in this case. (2) Since Article 9 is inapplicable, the Bank perfected its interest by recording the two general assignments in the office of the Register of Deeds for Blount County.[2]

*Effect of instruments with or without registration.*—All of the instruments mentioned in § 66–24–101 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register .... Tenn.Code Ann. § 66–26–101 (1982).

The trustee in bankruptcy contends the Bank failed to perfect its interest because the assigned notes are "instruments" which the Bank admittedly has never possessed. Tenn.Code Ann. § 47–9–105(g) (1979), in apposite part, defines "instrument" as "a negotiable instrument (defined in § 47–3–104) [3] ... or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment." As a general rule, a security interest in an instrument other than an instrument composing part of chattel paper is unperfected unless the secured party takes possession of the instrument. Tenn.Code Ann. § 47–9–304(1) (1979). The exceptions [4] to this general rule are inapposite in the case before the court.

■ The disputed notes are clearly instruments within the Article 9 definition of that term. Since an unperfected security interest is subordinate to the rights of a lien creditor, Tenn.Code Ann. § 47–9–301(1)(b) (Supp.1982),[5] and the trustee in bankruptcy has the rights of a lien creditor as of the commencement of the bankruptcy case, 11 U.S.C.A. § 544(a) (1979), the failure of the Bank to take possession of the disputed notes is fatal to its claim of a security interest in the notes if the Uniform Commercial Code is applicable.

Tenn.Code Ann. § 47–9–102 (1979) pertains to the scope of Article 9 of the Uniform Commercial Code as adopted in Tennessee:

(1) Except as otherwise provided in § 47–9–103 on multiple state transactions and in § 47–9–104 on excluded transactions, this chapter applies so far as concerns any personal property and fixtures within the jurisdiction of this state:

(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; and

(b) to any sale of accounts, contract rights or chattel paper.

(3) The application of this chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this chapter does not apply.

Comment 4 to this section is intended to illustrate the effect of subsection (3):

The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article [Chapter] is not applicable to the creation of the real estate mortgage. However, when the mortgage in turn pledges this note and mortgage to secure his own obligation to X, this Article [Chapter] is applicable to the security interest thus created in the note and the mortgage. Whether the transfer of the collateral for the note, i.e., the mortgagee's interest in Blackacre, requires further action (such as recording an assignment of the mortgagee's interest) is left to real estate law. See Section 9–104(j).

---

**3.** Tenn.Code Ann. § 47-3-104(1) (Supp.1982) enacts:

Any writing to be a negotiable instrument within this chapter must:

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay:

(i) a sum certain in money;

(ii) a sum in money which is determinable by a formula as provided in the writing, whether or not such formula requires the use of extrinsic criteria; or

(iii) a sum of money the amount of which is subject to renegotiation upon either the passage of time or the occurrence of an event.

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer.

**4.** See Tenn.Code Ann. § 47–9–304(4)–(5) (1979).

**5.** The exception for a purchase money security interest creditor, provided by Tenn.Code Ann. § 47–9–301(2) (Supp.1982), is irrelevant in the instant case.

The trustee insists the example in this comment of the mortgagee's pledge of a note and mortgage to secure his own obligation is the mirror image of the case before the court. Citing *Szabo v. Vinton Motors, Inc.,* 630 F.2d 1, 29 U.C.C.Rep.Serv. 737 (1st Cir.1980), the Bank correctly contends the comments to the Uniform Commercial Code do not have the force of law. Nevertheless, the comments do explain the purpose of the various sections and the intent of the draftsmen and are thus helpful in interpreting provisions which do have the force of law.

Noting the exception proviso of Tenn. Code Ann. § 47–9–102(1) (1979), the Bank contends Tenn.Code Ann. § 47–9–104(j) (1979) controls to exclude the assignments at issue from Article 9 coverage.

*Transactions excluded from chapter.* —This chapter does not apply:

.    .    .    .    .

(j) except to the extent that provision is made for fixtures in § 47–9–313, to the creation or transfer of an interest in or a lien on real estate. . . .

Tenn.Code Ann. § 47–9–104 (1979).

According to the Bank, the Tennessee courts which have considered this particular exclusion have given it a broad interpretation. *Waldschmidt v. Johnson,* 9 B.R. 14 (B.R.M.D.Tenn.1981) (rights of a seller under an unrecorded real estate installment contract are superior to those of the buyer's trustee in bankruptcy); *Union Livestock Yards, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 552 S.W.2d 392 (Tenn.App. 1976) *cert. denied* (assignment of royalties and/or rent payments from lease of rock quarry outside scope of Article 9 coverage). *Waldschmidt* and *Union Livestock* are, however, factually distinct from the instant case since neither involved the assignment of a negotiable note ("instrument").

The Bank contends *Commerce Union Bank v. May,* 503 S.W.2d 112 (Tenn.1973), is particularly applicable in the case under consideration. Commerce Union Bank advanced a loan to May in consideration of May's promissory note. A deed of trust against property on which the Mayfair Hotel was situated was given to Commerce Union by May to secure his note. A fire insurance policy was obtained wherein Commerce Union was identified as a mortgagee. The deed of trust included a covenant of the mortgagor (May) to keep the property insured as well as a provision excusing the mortgagee (Commerce Union) from responsibility for management of the collateral. May deeded the hotel security property to the Shelbys, who assumed the mortgage. The Shelbys sold the hotel property to the Kyles, who likewise assumed the mortgage to Commerce Union. The hotel property was destroyed by fire during a period of non-coverage. Commerce Union sought a deficiency judgment from May and the Shelbys after foreclosing its deed of trust.[6] May, contending he was merely a surety after his transfer to the Shelbys, argued in his defense that Commerce Union had unjustifiably impaired the collateral. See Tenn.Code Ann. § 47–3–606(1)(b) (1979). The court followed a previous decision, *Atlantic Life Ins. Co. v. Carter,* 165 Tenn. 628, 57 S.W.2d 449 (1932), holding a maker-mortgagor could not alter his relationship to his mortgagee from that of principal to surety by selling the mortgaged property. 503 S.W.2d at 116. The court also rejected May's asserted defense for another reason:

The definition of collateral appears only in T.C.A. § 47–9–105 of the UCC and said definition and the comments thereto make it clear that collateral is confined to tangible and intangible personal property. But even more fundamental is the fact that the UCC does not supersede the law in this State with respect to liens upon real estate.

*Commerce Union Bank v. May,* 503 S.W.2d 112, 117 (Tenn.1973).

---

**6.** Apparently, the Kyles were not named as defendants because their obligation had been discharged in bankruptcy.

Referring to *Commerce Union Bank v. May,* the Bank in the instant case maintains: "This case should put to rest any notion that a real estate note can be controlled by Article 9 in any way." Supplemental Brief On Behalf Of Plaintiff at 7. This court disagrees with the Bank's conclusion because it completely ignores Tenn. Code Ann. § 47–9–102(3) (1979). Furthermore, *Commerce Union Bank* involved the assumption of a note and mortgage, not the assignment thereof as security for an original mortgagee's own obligation.

### III

The apparent conflict between sections 9–102(3) and 9–104(j) of the Uniform Commercial Code has been a subject of both commentary and legal dispute. The issue in the instant case was discussed more than fifteen years ago in a law review article co-authored by Coogan, Kripke, and Weiss.

The status under article 9 of the assignment of a note secured by a real estate mortgage has been widely discussed.... The title companies in New York have insisted that for "mortgage warehousing"—the situation in which a mortgage banker or broker makes a real estate mortgage loan and pledges the mortgage to a bank until he finds a permanent mortgagee—*not only must the note* (or bond) and mortgage *be delivered* and the assignment of the mortgage recorded under real estate law, but a financing statement with respect to the transaction must also be filed under article 9. (Emphasis added.) Insofar as we understand the argument of the title companies, it rests on two separate bases:

(a) The persons demanding clarification argue that, even though section 9–104(j) excludes from the Code the transfer of an interest in or lien on real estate, the matter is not clear because of three facts: the real estate mortgage is itself personal property, presumably a general intangible; the pledge of the note is expressly brought under article 9 by section 9–102(3); and Official Comment 4 to that section specifically states that article 9 is applicable to the security interest created in the note and mortgage.

(b) Another argument is that the note and the real estate mortgage together are something more than they are separately. Just as a note and chattel mortgage together constitute a new form of collateral to which the Code applies the title "chattel paper" and for which it sets forth special rules, so the note and real estate mortgage together may constitute a "general intangible," which is defined to include all personal property not otherwise classified. If either of the arguments is sound, a security interest in the mortgage could be perfected only by filing.

We are satisfied that this view is unduly fearful. The clear intent of section 9–104(j) to exclude transfers of liens on real estate would be completely nullified if the argument were accepted that the lien, as a form of wealth, is personal property, a security interest in which is subject to article 9. Likewise, we feel that the argument that a note and real estate collateral could, in combination, be a general intangible under the Code is inconsistent with the fact that, when the Code intended to give special status to a combination of this nature (the chattel paper case), it expressly provided for it. If the theory advanced by the title companies were sound, it would apparently drag back into the Code all the other matters excluded by section 9–104, when transferred with a note for which they were collateral. There is, in our opinion, no danger that a court could read the statute in any such fashion. Because of the express language of section 9–104(j), we do not feel that Official Comment 4 to section 9–102 should cause any real confusion or doubt, but there can be no objection to a revision by the Permanent Editorial Board of the sentence that has been called into question, and we recommend this measure.

Coogan, Kripke, and Weiss, *The Outer Fringes of Article Nine: Subordination Agreements, Security Interest In Money And Deposits, Negative Pledge Clauses,*

*And Participation Agreements,* 79 Harv. L.Rev. 229, 270–71 (1965).

The court observes this discussion presupposes delivery by the holder-mortgagee of the *note* secured by real estate to his assignee when the note and real estate mortgage are assigned.

Comment 4, illustrating the operation of section 9–102(3), was in fact amended by the Permanent Editorial Board to explicitly provide that Article 9 is inapplicable to the *sale* by the mortgagee of a note secured by real estate. Nonetheless, it is apparent the revisors intended for Article 9 to continue to apply to the creation of a security interest in a note secured by real estate. The amended comment recites in part:

> However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage. This Article leaves to other law the question of the effect on rights under the mortgage of delivery or non-delivery of the mortgage or of recording or non-recording of an assignment of the mortgagee's interest. See Section 9–104(j).

Since the 1962 version of the Uniform Commercial Code has been adopted in Tennessee, the unrevised comment is still the comment to the official text of Tenn.Code Ann. § 47–9–102(3) (1979).

Professors White and Summers have described notes secured by real estate as "realty paper."

> B mortgages his real estate to L. L pledges B's note and the real estate mortgage to Bank as security for a loan. Article Nine does not apply to the transaction between B and L, but does apply to the transaction between L and Bank .... The cases are split, as a result of an apparent conflict between 9–102(3) and 9–104(j). However, comment 2 to 9–104 specifically refers to comment 4 to 9–102; it thus appears that security interests created in "realty paper" fall within Article Nine.

White and Summers, *Handbook Of The Law Under The Uniform Commercial Code,* 890–91 (2d ed. 1980).

■ The court does not interpret the comments of Professors White and Summers to require the filing of a financing statement to perfect an assignment of a note secured by real estate. Instead, the court believes that the assignee must perfect his interest in the note, secured by real estate, in accordance with Article 9. The character of a note, which is personal property, is certainly not transformed merely because it is secured by real estate.

The Bank asserts *Rucker v. State Exchange Bank,* 355 So.2d 171, 23 U.C.C.Rep. Serv. 1020 (Fla.App.1978), is on point. Harrell conveyed 75 acres of land to South 41 Corporation (South 41) in exchange for a note and purchase money mortgage executed by South 41. Rucker acquired the 75 acres, subject to Harrell's mortgage, from South 41. Harrell, as consideration for loans received, assigned the South 41 note and mortgage to State Exchange Bank, which gave notice of the assignment to South 41 but not to Rucker. State Exchange Bank also recorded its assignment from Harrell. Rucker borrowed money from Land Bank and paid Harrell the amount owing on the South 41 note. Rucker mortgaged the 75 acres to Land Bank to secure the payment of his loan from Land Bank. Unfortunately, Harrell defaulted on the loans he had received from State Exchange Bank, which foreclosed against Rucker based on the South 41 note and mortgage assigned to it. The trial court entered judgment in favor of State Exchange Bank. On appeal, it was held that the assignment as collateral for a bank loan of a real estate mortgage securing a promissory note is not a secured transaction.

There is no mention of possession of the South 41 *note* secured by the purchase money real estate mortgage in the *Rucker* opinion. The absence of any discussion on the subject suggests it was not an issue in *Rucker,* quite unlike the instant case. Presumably, State Exchange Bank complied

with the requirement of Fla.Stat. § 679.-304(1) by taking possession of the South 41 note assigned to it by Harrell. This presumption is more probable than not for two reasons. First, consider the statement by the court of the issue in *Rucker;* "The issue raised by this appeal is whether a real estate mortgage securing a promissory note becomes a secured transaction under Article 9 of the Uniform Commercial Code when it is assigned, along with the note, as collateral for a bank loan." 355 So.2d at 172. If State Exchange Bank had not taken possession of the South 41 note, the court in *Rucker* would have been required to address an issue before this court, namely, whether an assignee of a note secured by a real estate mortgage must take possession of the *note* as a step in the process of perfecting his interest. Secondly, the court reasoned its holding was proper because a contrary holding would require filing "all outstanding security interests in such mortgages...." 355 So.2d at 174. Thus, in contrast to the instant case, it appears the only issue in *Rucker* was whether an assignee in possession of a note secured by a real estate mortgage must file notice of the assignment of the *mortgage* pursuant to the provisions of Article 9.

The Bank also cites *In re Bristol Associates, Inc.,* 505 F.2d 1056 (3rd Cir.1974) for its discussion of the reasons for excluding transactions involving real estate from the scope of Article 9. The case involved an assignment of a lessor's interest in a real property lease as security for the lessor's promissory note. The assignee did not record its security interest in the lease by filing a financing statement or otherwise cause notice of the assignment to be recorded publicly. The court of appeals held the assignment was excluded from the filing and perfection requirements of the Uniform Commercial Code by section 9–104(j). *Bristol Associates* is patently distinct from the instant case since the assignment of collateral in that case did not involve any notes held by the assignor and the attendant

question of the necessity for compliance with section 9–304(1) of the Uniform Commercial Code.

The issues in the case before this court have been considered by the Ninth Circuit Court of Appeals in two very similar cases involving the same bankrupt. *Greiner v. Wilke (In re Staff Mortgage & Inv. Corp.),* 625 F.2d 281 (9th Cir.1980); *Huffman v. Wikle (In re Staff Mortgage & Inv. Corp.),* 550 F.2d 1228 (9th Cir.1977). Staff Mortgage and Investment Corp. (Staff) was in the business of buying and selling promissory notes secured by real estate deeds of trust. To secure its own notes for borrowed funds Staff would assign promissory notes and trust deeds from its inventory to its lenders. Documents to evidence Staff's assignment to a lender were routinely attached to the notes and real estate deeds of trust held in inventory by Staff. A "Corporation Assignment of Deed of Trust" would be duly recorded in the appropriate county. All documents and instruments with the exception of Staff's note evidencing the loan remained in the possession of Staff. The Ninth Circuit held in *Huffman v. Wikle,* 550 F.2d 1228, 1231 (9th Cir.1977), that the Huffmans, Staff's lender, had an unperfected security interest in the notes secured by the deeds of trust because they failed to perfect their interest in the notes by taking possession, as required by California's version of Uniform Commercial Code § 9–304(1). A different three-member panel [7] followed the *Huffman* holding in *Greiner v. Wilke,* 625 F.2d 281 (9th Cir.1980).

■ This court concurs in the holding of *Huffman* and *Greiner.* Tenn.Code Ann. § 47–9–304(1) (1979), requires an assignee of a note which is an "instrument" to take possession of the note to perfect his interest despite the fact the note is secured by a deed of trust or mortgage against real estate. To hold otherwise would permit a dishonest holder-mortgagee to assign the note and mortgage to a trusting lender and

---

**7.** Circuit Judge J. Blaine Anderson was a panel member in both cases.

subsequently negotiate the note to a different party.[8]

A recent, well-written article, Krasnowiecki, Miller, and Ziff, *The Kennedy Mortgage Co. Bankruptcy Case: New Light Shed on the Position of Mortgage Warehousing Banks*, 56 Am.Bankr.L.J. 325 (1982), presents a discussion of both the fundamental issue in the instant case and the question whether an assignee must also record the assignment of the real estate mortgage in addition to taking possession of the note representing the underlying obligation secured by the real estate mortgage.[9] Citing Comment 4 to Uniform Commercial Code Section 9–102(3), the authors maintain the UCC draftsmen intended for local real estate law to determine whether a security interest has been perfected in a mortgage. However, the authors submit a mortgage is merely an accessory to the principal obligation and take the position recordation of an assignment of the mortgage should be unnecessary so long as the assignee secured party takes and retains possession of the note and a written assignment of the mortgage.

Krasnowiecki, Miller, and Ziff also observe that 11 U.S.C.A. § 541(d) (1979) protects the *purchaser* of notes secured by real estate. Noting the critical concern of warehousing banks (banks which advance money to mortgage companies for financing mortgages) is whether possession of the notes perfects a security interest of an assignee in the real estate mortgages without recordation, the authors proffer a suggested amendment of § 544 of the Bankruptcy Code. They suggest the following new subsection to avoid unnecessary expense and litigation: "(c) Notwithstanding any other provision of this section, the trustee may not avoid the interest of any person who holds a security interest in a mortgage of real property if such person has an otherwise unavoidable security interest in the note or other obligation which supports the mortgage." Krasnowiecki, Miller, and Ziff, *supra* at 348.

## IV

In addition to its argument that Tenn. Code Ann. § 9–104(j) (1979) excludes the assignment from the scope of Article 9, the Bank contends: (1) the debtor's assignment of the notes and deeds of trust transferred legal title to the real property subject to the assigned deeds of trust as well as the mortgage debt; (2) the notes and deeds of trust were sold to the Bank as opposed to being pledged; (3) there was a constructive delivery of the disputed notes by virtue of the two general assignments, which were re-

---

**8.** A dispute between the assignee of a deed of trust whose interest is recorded and a holder in due course of the note secured by the assignee's deed of trust is a foreseeable result. Although the probability of such a development in the instant case was most unlikely since the note submitted by the parties as a typical note is headed "DEED OF TRUST NOTE," the fact remains that Peoples Bank of Polk County failed to comply with the requirement of Tenn. Code Ann. § 47–9–304(1) (1979).

Coogan, Kripke, and Weiss believe the assignment of a note secured by collateral should not result in a division of interest in the note and the collateral.

If Country Bank borrows from Metropolitan Bank on the security of Factory's note, Metropolitan Bank must, of course, obtain a delivery and pledge of the note. In addition, in order to perfect its interest in the underlying collateral, must it file if the collateral is inventory or take delivery if the collateral is an instrument? It is the present writers' conclusion that assignment of the basic note carries with it as a matter of law the security interest in the collateral for the note. While the movement of the collateral from assignor to assignee is in one sense a transfer, we think that a transfer incidental to the movement of debt is not a type of transfer for which the code requires notice. Once its status as collateral for the debt is perfected by the first lender, the collateral should follow the debt in that same status.

Coogan, Kripke, and Weiss, *supra* at 271–72.

**9.** *First Nat'l Bank of Boston v. Larson (In re Kennedy Mortgage Co.),* 17 B.R. 957 (B.R.D.N. J.1982), involved the inverse of the facts in the case presently before the court. The assignee in *Kennedy Mortgage Co.* took possession of the notes but did not record notice of the assignments of the real estate mortgages securing the notes. Judge Lipkin held the assignee had perfected its interest by taking possession of the notes and that the failure to record the assignments of the mortgages was not fatal to the secured claim of the assignee.

.corded; (4) *Huffman* and *Greiner* are inapposite because California is a "lien theory" state whereas Tennessee follows the "title theory" with respect to mortgages; (5) public policy dictates against a conclusion that the assignment is within the scope of Article 9.

■ The court is convinced the notes and deeds of trust were pledged, not sold, to the Bank as security for the debtor's note. Indeed, the parties have stipulated: "As collateral for the loan, debtor assigned to plaintiff all of its right, title and interest in certain promissory notes and deeds of trust encumbering real property...." Stipulation of Facts at 2. Regardless of any differences in theory with regard to the law of mortgages, *Huffman* and *Greiner* are applicable in the case before the court. The proper interpretation of provisions of a "uniform" code either identical or nearly identical to corresponding Tennessee provisions was involved in *Huffman* and *Greiner*.

■ With regard to the remaining arguments, this court may not ignore the requirement of Tenn.Code Ann. § 47–9–304(1) (1979). If the rights of the Bank under its recorded assignments are valueless, it is attributable to the Bank's failure to take possession of the notes assigned to it by the debtor as collateral. Any constructive delivery was insufficient to satisfy the statutory possession requirement in this case.[10]

■ The security interest of the plaintiff Peoples Bank of Polk County in the notes assigned by the debtor is unperfected vis-a-vis the trustee in bankruptcy, because possession is a condition of perfection of a security interest against notes which are instruments.

This Memorandum constitutes findings of fact and conclusions of law; Bankruptcy rule 752.

---

10. Comment 2 to Tenn.Code Ann. § 47–9–305 (1979) recites in relevant part: "Possession may be by the secured party himself or by an agent on his behalf: it is of course clear, however, that the debtor ... cannot qualify as such an agent for the secured party." Maryville Savings and Loan Corporation, as a debtor, could not have been the agent of the plaintiff Bank in this case for the purpose of perfecting the Bank's interest in the notes.