VILLANTI, Judge.
 

 JP Morgan Chase (JP Morgan) appeals an order granting summary judgment in favor of New Millennial, L.C., and Branch Banking & Trust (BB & T). The appeal arises from a mortgage foreclosure action filed by JP Morgan against New Millennial and BB & T. JP Morgan sought to foreclose two mortgages which originated in favor of AmSouth Bank and which were subsequently assigned to JP Morgan. Because the assignments from AmSouth to JP Morgan were not recorded, the trial court granted summary judgment against
 
 *683
 
 JP Morgan and in favor of New Millennial and BB & T, finding that New Millennial was a subsequent purchaser and BB & T was a subsequent creditor for valuable consideration without notice of the assignments to JP Morgan. Because the trial court erred in so holding under the facts of this case, we reverse.
 

 FACTS
 

 In 2000, Ross W. Jahren obtained two mortgages from AmSouth in connection with the purchase of real property located in Pinellas County. The two mortgages in favor of AmSouth were recorded in the public records of Pinellas County. In 2004, AmSouth assigned the mortgages to JP Morgan, but this assignment was not recorded in the public records.
 

 In 2006, Jahren entered into an agreement to sell the property to New Millennial. BB & T financed New Millennial’s purchase. As part of the sales process, New Millennial’s closing agent performed a title search on the property and discovered the two recorded AmSouth mortgages, which were reflected as still outstanding. Chicago Title Insurance Company then issued a Commitment for Title Insurance indicating that it would issue title insurance upon receipt of the “cancelled note[s] and satisfaction^] or release[s]” for the two mortgages executed by Jahren in favor of AmSouth. New Millennial’s closing agent failed to obtain the cancelled notes and satisfactions or releases requested by Chicago Title. Instead, the closing agent contacted AmSouth by telephone and was allegedly told by an unidentified
 
 [1]
 
 AmSouth representative that the loans were paid off and that written confirmation of this fact would be provided. On April 24, 2006, someone on behalf of AmSouth faxed to the closing agent two computer screen printouts styled “Installment Loan Account Profile,” which reflected that the loans had a “close date” of June 30, 2004, and had a current balance of $0. The documents also stated “ *PD OFF.” Jahren and New Millennial finalized the sale of the property without obtaining the cancelled notes and satisfactions or releases specifically requested by Chicago Title.
 

 The AmSouth mortgages were never satisfied, and JP Morgan began foreclosure proceedings as AmSouth’s assignee. Importantly, New Millennial and BB & T did not defend by arguing that the two notes had been paid off and the mortgages satisfied.
 
 [2]
 
 Rather, they defended by arguing that the mortgages were ineffective and unenforceable against them because JP Morgan had not recorded the assignments received from AmSouth, as required by section 701.02, Florida Statutes (2004). Both sides filed motions for summary judgment. On September 11, 2007, the trial court denied JP Morgan’s motion for summary judgment and granted New Millennial and BB & T’s motion, finding:
 

 1. AmSouth Bank assigned the two mortgages at issue in this case to JP Morgan Chase (“Assignments”). The Assignments were not recorded in accordance with § 701.02,
 
 Florida Statutes.
 

 
 *684
 
 2. New Millennial is a subsequent purchaser for valuable consideration,
 
 was without notice of the Assignments,
 
 and is protected by § 701.02,
 
 Florida Statutes.
 

 3. BB & T is a subsequent creditor for valuable consideration,
 
 was without notice of the Assignments,
 
 and is protected by § 701.02,
 
 Florida Statutes.
 

 4. The mortgages
 
 being
 
 foreclosed by JP Morgan Chase in this case are ineffective and unenforceable against New Millennial and BB & T[.]
 

 (Underline emphasis added.) The court subsequently denied JP Morgan’s motion for rehearing or reconsideration, stating:
 

 Moreover, the Court finds that the Defendant New Millennial was a subsequent purchaser for valuable consideration, who
 
 had no knowledge or notice of the mortgages at issue here.
 
 Rather, New Millennial made a diligent inquiry to determine whether any amounts were due on the AmSouth mortgage and they were advised that the loan in question was paid in full. Moreover Defendant BB & T is a subsequent creditor for valuable consideration with
 
 no knowledge or notice of the mortgages at issue.
 
 Accordingly, pursuant to section 701.02,
 
 Florida Statutes,
 
 the mortgages at issue are not effective or enforceable against New Millennial or BB & T.
 

 (Underline emphasis added.) This appeal followed.
 

 ANALYSIS
 

 We review de novo an order granting summary judgment.
 
 Knowles v. JPMorgan Chase Bank, N.A.,
 
 994 So.2d 1218, 1219 (Fla. 2d DCA 2008). Summary judgment should be granted “only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered, and (2) the moving party is entitled to a judgment as a matter of law.”
 
 Id.
 
 (citations omitted).
 

 Chapter 701, Florida Statutes (2004), is entitled “ASSIGNMENT AND CANCELLATION OF MORTGAGES.” Section 701.01 states:
 

 Assignment. — Any mortgagee may assign and transfer any mortgage made to her or him, and the person to whom any mortgage may be assigned or transferred may also assign and transfer it, and that person or her or his assigns or subsequent assignees may lawfully have,
 
 take and pursue the same means and remedies which the mortgagee may lawfully have, take or pursue for the foreclosure of a mortgage and for the recovery of the money secured thereby.
 

 (Underline emphasis added.) Section 701.02 provides, in relevant part:
 

 Assignment not effectual against creditors unless recorded and indicated in title of document.—
 

 (1) No assignment of a mortgage upon real property or of any interest therein, shall be good or effectual in law or equity, against creditors or subsequent purchasers, for a valuable consideration,
 
 and without notice,
 
 unless the assignment is contained in a document which, in its title, indicates an assignment of mortgage and is recorded according to law.
 

 (2) The provisions of this section shall also extend to assignments of mortgages resulting from transfers of all or any part or parts of the debt, note or notes secured by mortgage, and none of same shall be effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration without notice, unless a duly executed assignment be recorded according to law.
 

 (Underline emphasis added.)
 

 JP Morgan first argues that the trial court misapplied section 701.02 when
 
 *685
 
 it held that New Millennial was a subsequent purchaser and BB & T was a subsequent creditor for valuable consideration and without notice of the assignments. JP Morgan’s position is that section 701.02(1) only applies to estop an earlier purchaser/assignee of a
 
 mortgagee
 
 — the person or entity that loaned the money involved in the mortgage and obtained a security interest on the piece of property — from claiming priority in the same mortgage chain as against a subsequent assignee of the same mortgage when the earlier
 
 mortgagee
 
 fails to record the earlier assignment of the mortgage. In other words, if the original mortgagee assigns the mortgage to Entity A and Entity A fails to record that assignment, Entity A cannot claim priority over a latter assignee of the same mortgage (Entity B). We agree with JP Morgan’s interpretation of the statute.
 

 Although this is an issue of first impression in this district, we are guided in its resolution by
 
 Kapila v. Atlantic Mortgage & Investment Corp. (In re Halabi),
 
 184 F.3d 1335 (11th Cir.1999). In that case, Mr. Halabi gave Republic Savings Bank a mortgage on real property.
 
 Id.
 
 at 1336. Although Republic Savings Bank recorded the mortgage, that mortgage was later assigned several times and the entity to which the mortgage was last assigned failed to record its assignment.
 
 Id.
 
 When the bankruptcy trustee, standing in the shoes of mortgagor Halabi, tried to avoid the mortgage debt based on the last as-signee’s failure to record the assignment, the bankruptcy court held that section “701.02’s recording requirement is applicable only to (and enforceable by) competing creditors or subsequent
 
 bon,a fide
 
 purchasers of the
 
 mortgagee,
 
 not by the mortgagor.”
 
 Id.
 
 at 1338 (underline emphasis added). The court concluded that the statute does not protect the mortgagor, nor anyone “claiming under a mortgagor.”
 
 Id.
 
 We agree with the reasoning of
 
 In re Halabi
 
 because its interpretation of the statute makes sense.
 

 First, “[w]hen interpreting a statute and attempting to discern legislative intent, courts must first look at the actual language used in the statute.”
 
 Joshua v. City of Gainesville,
 
 768 So.2d 432, 435 (Fla.2000). Here, the title of chapter 701 — Assignment and Cancellation of Mortgages — bears out the obvious: it applies to purchasers of mortgages, not to purchasers of real property or their lenders.
 

 Furthermore, as noted in
 
 In re Halabi:
 

 The recording requirement is not intended to protect one claiming under a mortgagor-against whose property there is already a perfected mortgage-with respect to subsequent assignments of the mortgage. The mortgagor has actual notice of the original mortgage, and
 
 anyone claiming under the mortgagor has constructive notice if the mortgage is recorded.
 
 From the point of view of the mortgagor or someone standing in his shoes,
 
 a subsequent assignment of the mortgagee’s interest-ivhether record,ed or not-does not change the nature of the interest of the mortgagor or somsone claiming under him.
 
 Nor should a failure to record any subsequent assignment afford the mortgagor or [anyone] standing in his shoes an opportunity to avoid the mortgage.
 

 184 F.3d at 1338 (emphasis added). Because the mortgagor’s successor “had constructive notice of a mortgage
 
 by whomever held,
 
 he cannot assume the status of a
 
 bona fide
 
 purchaser without notice.”
 
 Id.
 
 at 1338 n. 1 (underline emphasis added). Any other interpretation of section 701.02 would turn well-established secured transaction principles on their heads: a buyer could effectively ignore a recorded mortgage simply because the mortgage/note
 
 *686
 
 has been sold in the aftermarket to a different financial institution which has failed to record the assignment. Like the court in
 
 In re Halabi,
 
 we find that “[w]hile each subsequent assignment had a bearing on the rights of the mortgagees
 
 inter se,
 
 it did not affect the rights or interests of the debtor or the debtor’s [successor]....”
 
 Id.
 
 at 1339.'
 

 As pointed out in
 
 In re Halabi,
 
 in
 
 Bradley v. Forbs,
 
 116 Fla. 350, 156 So. 716 (1934), the Florida Supreme Court held that the predecessor of section 701.02 applied only to creditors or subsequent purchasers of a mortgagee.
 
 In re Halabi,
 
 184 F.3d at 1338 n. 1. The court in
 
 Bradley
 
 explained:
 

 [Wjhen the original mortgage was recorded and no satisfaction thereof entered upon the record, in the absence of other definite proof to the contrary, it must be assumed that the mortgage is still in full force and effect in the hands of some one and a subsequent purchaser or mortgagee has the right to require the production of the mortgage and note which it is given to secure, or a satisfaction on record.
 

 156 So. at 718;
 
 see also Huntington Nat’l Bank v. Merrill Lynch Credit Corp.,
 
 779 So.2d 396, 398 (Fla. 2d DCA 2000) (“As long as the debt remained and the mortgage was unsatisfied of record, there was no right to presume that it had been satisfied or extinguished.”).
 

 The fact of the matter is that, in this case, the original mortgages on the property were duly recorded and no satisfaction was entered on the public record. New Millennial and BB & T had actual knowledge of the existence of the two recorded mortgages and also had actual knowledge that the public records reflected that those mortgages had not been satisfied. Therefore, until they received satisfactions on record, New Millennial and BB & T should have assumed that the mortgages were still in full force and effect in someone’s hands. Their title insurance agent, Chicago Title, specifically requested “production of the cancelled note[s] and satisfaction^] or release[s]” of the recorded mortgages executed by Jahren to AmSouth. Nevertheless, New Millennial and BB & T failed to obtain those documents which would have eliminated any doubt that the debt had been satisfied or which would have alerted them to the fact that they needed to withhold monies at the closing to satisfy the notes and mortgages. By failing to do so, they cannot be considered a bona fide purchaser and a bona fide creditor without notice and cannot consequently avoid the mortgages assigned to JP Morgan. Accordingly, the trial court, erred in concluding that New Millennial and BB & T could avoid the mortgages just because JP Morgan had failed to record the assignments.
 
 [3]
 

 Next, New Millennial and BB & T posit that even if this court agrees with the reasoning and holding of
 
 In re Halabi,
 
 that case is inapplicable here because their representatives followed the procedures set forth in section 701.04 by obtaining a computer printout furnished by AmSouth indicating that the recorded debt had been satisfied. Therefore, their argument follows, they had no notice of the assignment, and they reasonably believed the original mortgages had been paid off. The trial court adopted this argument, finding that New Millennial was a bona fide purchaser
 
 *687
 
 without notice because it had “diligently” inquired about the AmSouth mortgages and had been advised that they had been paid in full. We reject New Millennial and BB & T’s argument because the procedures outlined in section 701.04 were
 
 not
 
 followed in this case.
 

 Section 701.04 provides, in relevant part:
 

 Cancellation of mortgages, liens, and judgments.—
 

 (1) Within 14 days after receipt of
 
 the written request of a mortgagor,
 
 the holder of a mortgage shall deliver to the mortgagor at a place designated in the written request
 
 an estoppel letter
 
 setting forth the unpaid principal balance, interest due, and the per diem rate. Whenever the amount of money due on any mortgage, lien, or judgment shall be fully paid to the person or party entitled to the payment thereof, the mortgagee, creditor, or assignee, or the attorney of record in the case of a judgment, to whom such payment shall have been made,
 
 shall execute in writing an instrument acknowledging satisfaction of said mortgage, lien, or judgment and have the same acknowledged, or proven, and duly entered of record, in the book provided by law for such purposes in the proper county. Within 60 days of the date of receipt of the full payment of the mortgage,
 
 lien, or judgment, the person required to acknowledge satisfaction of the mortgage, lien, or judgment shall send or cause to be sent the recorded satisfaction to the person who has made the full payment. In the case of a civil action arising out of the provisions of this section, the prevailing party shall be entitled to attorney’s fees and costs.
 

 (Underline emphasis added.) The plain effect of the above provision is to enable the closing agent to timely obtain a satisfaction of mortgage if it remits to the mortgagee the amount set forth in an es-toppel letter. In this case, the title search reflected two recorded mortgages on the property. In an affidavit signed by Jahren on May 8, 2006, before closing on the transaction, he stated that the property was free and clear of all encumbrances,
 
 except
 
 those which were shown on the Title Insurance Commitment issued by Chicago Title. By so qualifying his affidavit, Jahren thereby acknowledged the debt with AmSouth was still outstanding as of that date. Yet, neither Jahren nor New Millennial nor its agents made a
 
 written
 
 request for an estoppel letter related to the two recorded mortgages, as required by section 701.04(1). Instead, they proceeded to closing even though there was no recorded “instrument acknowledging satisfaction of [the] mortgage, lien, or judgment ...
 
 duly entered, of record in the book provided by law for such, purposes in the proper county.”
 
 § 701.04(1) (emphasis added). The computer printouts faxed by AmSouth to the closing agent pursuant to a telephone inquiry were, at best, a red flag that raised the questions: (1) Did the printouts mean that the mortgages and notes were satisfied
 
 two years prior
 
 or were the notes “closed out” because they and the mortgages were transferred to or purchased by a third party?;
 
 [4]
 
 and (2) Given that section 701.03 requires that the mortgagee cancel a fully paid mortgage “within 60 days” of payment, why was there no satisfaction of the mortgages on record
 
 two years
 
 after the debt was alleg
 
 *688
 
 edly satisfied? Thus, the printout screens obtained by New Millennial and BB
 
 &
 
 T could not be viewed as an estoppel letter, nor could they serve as substitute for duly recorded satisfactions of mortgage documents. Under any interpretation of the undisputed facts, the continued existence and validity of the mortgages and notes was never explained away so as to establish New Millennial’s and BB & T’s status as bona fide purchaser and creditor for value.
 

 CONCLUSION
 

 “[I]t is the debt and not the mere evidence of it which is secured.”
 
 Drake Lumber Co. v. Semple,
 
 100 Fla. 1757, 130 So. 577, 581 (1930). Under the circumstances of this case, in the absence of cancelled notes or recorded satisfactions of the two mortgages, the trial court could not legally declare the loans “ineffective and unenforceable” as against New Millennial and BB & T. To do so deprived JP Morgan of its right to pursue the means and remedies of foreclosure, which are legal attributes of the mortgages it purchased. Hence, we reverse the summary judgment. Because the record is clear that JP Morgan’s priority was not impugned vis-a-vis the Appellees, we remand for the trial court to vacate the summary judgment and reinstate the foreclosure proceedings with the priority status established as set forth in this opinion.
 
 [5]
 

 Reversed and remanded with directions.
 

 ALTENBERND and DAVIS, JJ., Concur.
 

 [1]
 

 . The closing agent did not obtain the name of the AmSouth representative who provided this information.
 

 [2]
 

 . Although Jahren is a nominal party to this appeal and did not file an appearance, we note that his defenses below did not create a disputed issue of material fact as to whether the two AmSouth notes had been paid off and the mortgages satisfied. He did not attach proof of payment, such as checks showing that the two AmSouth notes had been paid off and the mortgages satisfied. Rather, he filed copies of the same two computer screen printouts discussed above. As discussed herein, these documents did not demonstrate that the mortgages had been satisfied.
 

 [3]
 

 . Our opinion should not be viewed as condoning JP Morgan's failure to record the assignment. Rather, we simply conclude that the failure to record the assignment here was not fatal to JP Morgan's right as a matter of law to pursue the remedy of foreclosure. Obviously, a large part of the underlying litigation would have been avoided if the assignment had been duly recorded, as is typically done.
 

 [4]
 

 . In opposition to New Millennial and BB & T's motion for summary judgment, JP Morgan filed the affidavit of Brian Buzbee, Assistant Vice President of Regions Bank. Regions Bank is the successor to AmSouth. Mr. Buz-bee’s affidavit stated that the type of screen printout obtained by New Millennial's closing agent would show a zero balance on a loan either when a loan is legitimately paid off in full
 
 or
 
 when the loan was transferred, assigned, or sold.
 

 [5]
 

 . Although this opinion likely precludes New Millennial and BB & T from obtaining relief from JP Morgan, nothing herein should be construed to preclude them from pursuing any other remedies that may be available to them against any other party involved in this transaction.