DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HSBC BANK USA, N.A.,**
Appellant,

v.

**ROLANDO PEREZ, JUAN G. GUERRA, ESPERANZA MEDINA, LaSALLE BANK, N.A.,** and **U.S. BANK, N.A.**, as trustee, successor in interest to Bank of America, N.A., as successor by merger to LaSalle Bank, N.A., as trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-6 Trust,
Appellees.

No. 4D13-3193

[May 6, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Barry J. Stone, Senior Judge; L.T. Case Nos. 2008-CA-059975 and 2009-CA-00264.

Jeremy W. Harris, Masimba M. Mutamba, and Khari E. Taustin of Morris, Laing, Evans, Brock & Kennedy, Chtd., Wellington, for appellant.

Joseph D. Wargo of Wargo & French, LLP, Miami, and Jeffrey N. Williams of Wargo & French, LLP, Los Angeles, California, for appellee, U.S. Bank, N.A.

GROSS, J.

As a result of a fraudulent scheme, two banks took possession of nearly identical promissory notes secured by the same mortgage. The underlying transaction contemplated just one note. After payments stopped, both banks sought to foreclose. The question before us asks which bank may proceed?

To resolve the dispute, the circuit court applied section 701.02, Florida Statutes (2008), the recording statute for mortgage assignments. We conclude that the Uniform Commercial Code, and not the recording statute, controls this case. Under the Code, the bank that first perfected its interest in a note and related mortgage is entitled to the priority of its interest. We therefore reverse the final judgment.

### *Factual Background*

The parties stipulated to the salient facts. On April 17, 2006, appellee Rolando Perez ("the Borrower") obtained a loan and mortgage from Federal Guaranty Mortgage Company ("FGMC"). The mortgage was recorded the following month in Broward County's public records. At closing, the Borrower executed two nearly identical promissory notes in FGMC's favor, both for the same amount and both secured by the same mortgage. The parties agree that the execution of two promissory notes was part of a larger fraudulent scheme that included other loans.

On June 30, 2006, appellant HSBC Bank USA, N.A. closed on a pooling and servicing agreement ("PSA") and took possession of one of the Borrower's "original" promissory notes. This transferred promissory note was specially endorsed from FGMC to American Home Mortgage Corp. and from American Home Mortgage Corp. to HSBC.

After HSBC's purchase, appellee LaSalle Bank entered into a separate PSA, which led to its taking possession of the Borrower's second "original" promissory note on August 8, 2006. Like HSBC's promissory note, the note obtained by LaSalle Bank contained special endorsements completing the chain of ownership.

The Borrower defaulted in 2008. At oral argument, it was suggested that someone other than the Borrower made some payments on one of the notes to keep the fraudulent scheme alive. After all payments stopped, both banks commenced separate foreclosure lawsuits and recorded assignments of mortgage. HSBC recorded its mortgage assignment on April 24, 2009. LaSalle Bank obtained an assignment of mortgage on June 5, 2009, which stated that the assignment was effective as of January 2, 2009; it recorded this assignment on August 12, 2009. LaSalle Bank recorded a second assignment of mortgage on October 8, 2010.

At the behest of a third mortgagee, the foreclosure cases were consolidated. Nevertheless, on March 20, 2012, HSBC—without naming or serving LaSalle Bank with its motion for summary judgment—obtained a final judgment of foreclosure and later sold the subject property to Juan H. Guerra and Esperanza Medina ("the Purchasers").

With the dual promissory note conundrum still unresolved, the banks entered into an October 1, 2012 agreed order vacating the final judgment, sale, and issuance of certificate of title. Frustrated by the divestment of title, the Purchasers intervened in the consolidated lawsuits and filed a counterclaim, seeking a declaratory judgment establishing "whether HSBC or LaSalle is the owner and holder of the FGMC Note and Mortgage which both parties seek to enforce." Should HSBC be determined the note's

rightful holder, the Purchasers asserted the bank could ratify the prior sale and execute a new deed in their favor to allow them to retain possession of the property.

The matter went to a non-jury trial. By that point, LaSalle Bank had been succeeded as party plaintiff by U.S. Bank, N.A. ("U.S. Bank"). The trial court entered a final declaratory judgment in U.S. Bank's favor after applying section 701.02—Florida's recording statute for mortgage assignments. Finding that section 701.02 "appl[ies] to all subsequent assignments of the original mortgagee," the trial court found it determinative that before HSBC recorded its mortgage assignment, "US Bank obtained its assignment of the same mortgage by closing on its pooling and servicing agreement, thereby obtaining its equitable interest in the mortgage." Since U.S. Bank "obtained its [equitable] assignment for valuable consideration and without notice of HSBC's prior assignment," the trial court held that, pursuant to section 701.02, U.S. Bank maintained a priority interest over HSBC as a subsequent bona fide purchaser.

### *The Uniform Commercial Code*

Article 9 of Florida's Uniform Commercial Code governing secured transactions is contained in Chapter 679, Florida Statutes. Generally, Chapter 679 "does not apply to the creation of" a real property mortgage. § 679.1091, Fla. Stat. Ann., UCC cmt. 7 (West 2008); *see also* § 679.1091(3)(k), Fla. Stat. (2008). However, if, as occurred in this case, the note in a mortgage transaction is sold or assigned, Chapter 679 applies to the security interest created in favor of the purchaser or assignee of the note. As Comment 7 to section 679.1091 explains:

> O borrows $10,000 from M and secures its repayment obligation, evidenced by a promissory note, by granting to M a mortgage on O's land. [Article 9] does not apply to the creation of the real-property mortgage. However, if M sells the promissory note to X or gives a security interest in the note to secure M's own obligation to X, [Article 9] applies to the security interest thereby created in favor of X. The security interest in the promissory note is covered by [Article 9] even though the note is secured by a real-property mortgage.

Once HSBC took possession of the note it had an Article 9 security interest in the note. Because of the application of section 679.1091(2), HSBC's possession of the note gave it "an attached security interest in the mortgage lien that secure[d] the note." § 679.1091, Fla. Stat. Ann., UCC cmt. 7 (West 2008). Once HSBC perfected its security interest in the note,

"the security interest in the mortgage lien likewise [was] perfected." *Id.*; *see also* Report of the Permanent Editorial Board for the Uniform Commercial Code: Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes, at 2 (Nov. 14, 2011), *available at* http://www.ali.org/00021333/PEB%20Report%20-%20November%202011.pdf.

This scenario is consistent with the notion that the promissory note, not the mortgage, is the operative instrument in a mortgage loan transaction, since "a mortgage is but an incident to the debt, the payment of which it secures, and its ownership follows the assignment of the debt." *WM Specialty Mortg., LLC v. Salomon*, 874 So. 2d 680, 682 (Fla. 4th DCA 2004) (quoting *Johns v. Gillian*, 184 So. 140, 143 (Fla. 1938)). "If the note or other debt secured by a mortgage be transferred without any formal assignment of the mortgage, or even a delivery of it, the mortgage in equity passes as an incident to the debt . . . . " *Id.*

Under section 679.2031(1), Florida Statutes (2008), a security interest attaches to collateral "when it becomes enforceable against the debtor with respect to the collateral." An assignment of a promissory note "attaches"— in other words, becomes enforceable against the assignor and debtor with respect to the collateral—when (a) value has been given, (b) the assignor has rights in the collateral or the power to transfer rights in the collateral to a secured party, and (c) the assignor has either "authenticated a security agreement that provides a description of the collateral" or the assignee has taken possession of the note under section 679.3131, Florida Statutes, (2008). *See* § 679.2031(1), (2), Fla. Stat. (2008). As applied to the third requirement, the promissory note itself is the "collateral," *see* § 679.1021(1)(*l*)2., Fla. Stat. (2008), and the written assignment constitutes the "security agreement," *see* §§ 679.1021(1)(ttt), 671.201(35), Fla. Stat. (2008). Here, HSBC's security interest attached, at the latest, when it took possession of its note.

Attachment has "two general consequences." 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 31-1, at 111 (6th ed. 2010). "First, if the debtor defaults, the secured creditor can foreclose or otherwise realize on the collateral to satisfy the claim." *Id.* Second, subject to exceptions, "the secured party can, in general, take the collateral from, or to the exclusion of, third parties." *Id.* Chapter 679 distinguishes "attachment" of a security interest from its "perfection." "It is perfection . . . that affords maximum secured creditor protection against third parties . . . . " *Id.*; *see also Commercial Credit Counseling Servs., Inc. v. W.W. Grainger, Inc.*, 840 N.E.2d 843, 848 (Ind. Ct. App. 2006).

*Perfection*

One method of perfecting a security interest in a promissory note is by taking possession of the original promissory note. *See* § 679.3131(1), Fla. Stat. (2008);[1] 4 J. White & R. Summers, *supra*, § 31-8. A note is an "instrument" and a security interest can be perfected by taking possession of it. *See First Nat'l Bank of Boston v. Larson (In re Kennedy Mortg. Co.)*, 17 B.R. 957, 964-65 (Bankr. D. N.J. 1982).

Perfection is significant because it serves two important purposes: (1) determining matters of priority and (2) providing third parties with notice of the transaction. Article 9's perfection requirements were "adopted to provide a notice system similar to that provided by the recordation of real estate conveyances." *In re S. Props., Inc.*, 44 B.R. 838, 844 (Bankr. E.D. Va. 1984). As one commentator has explained:

> The basic idea is that the secured creditor must do something to give effective public notice of his interest; if he leaves the property in the debtor's possession and under his apparent control, the debtor will be . . . enabled to sell the property to innocent purchasers or to induce other innocent persons to lend money to him on the strength of his apparently unencumbered assets.

David A. Ebroon, *Perfection by Possession in Article 9: Challenging the Arcane but Honored Rule*, 69 Ind. L.J. 1193, 1194 (1994) (quoting Grant Gilmore, *Security Interests in Personal Property* § 14.1, at 438 (1965)).

Possession of a promissory note effectively gives "notice to third-parties that the creditor has an interest in the collateral." *Hutchison v. C.I.T. Corp.*, 726 F.2d 300, 302 (6th Cir. 1984). "The debtor's lack of possession coupled with actual possession by the creditor, the creditor's agent or the bailee serves to provide notice to prospective third party creditors that the

---

[1]Section 679.3131(1) provides:

> (1) Except as otherwise provided in subsection (2), a secured party may perfect a security interest in negotiable documents, goods, instruments, money, or tangible chattel paper by taking possession of the collateral. A secured party may perfect a security interest in certificated securities by taking delivery of the certificated securities under s. 678.3011.

In addition, possession can be effectuated through a bailee. *See* § 679.3131(3), Fla. Stat. (2008).

debtor no longer has unfettered use of (his) collateral." *Heinicke Instruments Co. v. Republic Corp.*, 543 F.2d 700, 702 (9th Cir. 1976) (internal quotation omitted). The Ninth Circuit has written that "the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." *Huffman v. Wikle (In re Staff Mortg. & Inv. Corp.)*, 550 F.2d 1228, 1230 (9th Cir. 1977). An inability to produce a note that is in a secured party's possession would effectively give notice of the secured party's interest. 4 J. White & R. Summers, *supra*, § 30-8.

*Priority*

Both the timing and the method of obtaining perfection are key to establishing priority. Pursuant to section 679.322(1)(a), Florida Statutes (2008), "[c]onflicting perfected security interests . . . rank according to priority in time of filing or perfection." The "guiding principle" of section 679.322 "is that the secured party who . . . perfects before the other person, wins." 4 J. White & R. Summers, *supra*, § 33-3, at 326. Section 679.330(4), Florida Statutes (2008), dictates that "a purchaser of an instrument has priority over a security interest in the instrument **perfected by a method other than possession** if the purchaser gives value and takes possession of the instrument in good faith and without knowledge that the purchase violates the rights of the secured party." (Emphasis added).

In this case, by taking possession of the promissory note before LaSalle Bank, HSBC was the first to perfect its interest in a note connected to the underlying mortgage.

Under these principles, HSBC's reliance upon *Provident Bank v. Community Home Mortgage Corp.*, 498 F. Supp. 2d 558 (E.D.N.Y. 2007), is both instructive and persuasive. In *Provident Bank,* the defendant— categorized as a "warehouse lender"[2]—engaged in a scheme known as

---

[2]White and Summers explain that a "warehouse lender" operates in the secondary mortgage market where lenders warehouse mortgages. 4 J. White & R. Summers, *supra*, § 30-8(a), at 62.

> In warehousing arrangements, one party lends against large numbers of mortgages for short periods of time. These lenders want an inexpensive and simple mode of perfection against the *creditors of the mortgagee.* The lender may find it prohibitively expensive to examine the title and to file a real estate recording in the name of each mortgagee. To require lenders to do so would not materially enhance the knowledge of third party creditors and might make

"double-booking," wherein it had mortgage borrowers "execute[ ] duplicate original promissory notes and mortgage assignments" so the defendant could obtain "duplicate funding for one loan from two different" sources. *Id.* at 562. The *Provident Bank* scheme is similar to the fraud in this case. Pursuant to its scheme, the defendant sold nine promissory notes to two banks—NetBank and Southwest Securities Bank. In most of the cases, Southwest recorded its mortgage assignments first but NetBank first took possession of the notes. *Id.* at 563. Ultimately, Southwest moved for summary judgment, contending that pursuant to New York's recording statute it held priority over NetBank. *Id.* at 565. NetBank countered that Article 9's priority rules should govern. *Id.*

The federal district court rejected Southwest's argument for priority based in its earlier real estate recording. *Id.* at 568. The court observed that recording statutes have "little bearing in a case where . . . the parties contest the supremacy of perfecting the security interest *in the note* versus perfecting the security interest *in the mortgage* in determining priority." *Id.* The court held that the mortgage follows the debt and that NetBank's earlier possession of the notes entitled it to priority as first perfected under Article 9. *Id.* at 569, 571.

White and Summers observe that "[t]o the extent that [*Provident Bank*] shows that one should look to Article 9 . . . it is clearly right." 4 J. White & R. Summers, *supra*, § 30-8, at 65. Looking to Article 9 for resolution leads to a "sensible outcome," but the existence of two "original" notes "makes the case's footing in Article 9 slippery." *Id.* "In general the rules in Article 9 are not designed to deal with the transaction in which there are two 'originals' . . . . " *Id.* The *Provident Bank* approach recognizes that perfection by possession of a note will not be problematic in the vast majority of cases and avoids the cost of imposing a recording procedure disruptive to the lending industry based on difficult facts.

Like NetBank, HSBC in this case established its priority in the note—and, by extension, the mortgage—by virtue of being the first to perfect its interest through possession. The Code does not leave LaSalle Bank without a remedy. Under section 673.4161(1), Florida Statutes (2014), LaSalle has an action for breach of warranty against the transferor of the note, a remedy more theoretical than practical given the existence of the scheme to defraud.

---

traditional practices in the secondary mortgage market so expensive that they would be abandoned.

*Id.* § 30-8(a), at 62-63.

### *Section 701.02 Does Not Apply as Between the Dueling Mortgage Assignments in This Case*

We reject LaSalle Bank's argument that section 701.02 compels a result in its favor. Two cases—*American Bank of the South v. Rothenberg*, 598 So. 2d 289 (Fla. 5th DCA 1992), and *JP Morgan Chase v. New Millennial, LC,* 6 So. 3d 681 (Fla. 2d DCA 2009)—touch on the application of section 701.02 to successive assignees of a note and mortgage. We agree with *Rothenberg* that the statute has no application to such successive assignees, a conclusion reinforced by the 2005 amendments to section 701.02 and Uniform Commercial Code Comment 7 to section 679.1091.

Section 701.02 is entitled "Assignment not effectual against creditors unless recorded and indicated in the title of document." The statute provides:

> (1) An assignment of a mortgage upon real property or of any interest therein, is not good or effectual in law or equity, against creditors or subsequent purchasers, for a valuable consideration, and without notice, unless the assignment is contained in a document that, in its title, indicates an assignment of mortgage and is recorded according to law.

> (2) This section also applies to assignments of mortgages resulting from transfers of all or any part or parts of the debt, note or notes secured by mortgage, and none of same is effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration without notice, unless a duly executed assignment be recorded according to law.

> (3) Any assignment of a mortgage, duly executed and recorded according to law, purporting to assign the principal of the mortgage debt or the unpaid balance of such principal, shall, as against subsequent purchasers and creditors for value and without notice, be held and deemed to assign any and all accrued and unpaid interest secured by such mortgage, unless such interest is specifically and affirmatively reserved in such an assignment by the assignor, and a reservation of such interest or any part thereof may not be implied.

> (4) Notwithstanding subsections (1), (2), and (3) governing the assignment of mortgages, chapters 670-680 of the Uniform Commercial Code of this state govern the attachment and perfection of a security interest in a mortgage upon real property and in a promissory note or other right to payment

or performance secured by that mortgage. The assignment of such a mortgage need not be recorded under this section for purposes of attachment or perfection of a security interest in the mortgage under the Uniform Commercial Code.

(5) Notwithstanding subsection (4), a creditor or subsequent purchaser of real property or any interest therein, for valuable consideration and without notice, is entitled to rely on a full or partial release, discharge, consent, joinder, subordination, satisfaction, or assignment of a mortgage upon such property made by the mortgagee of record, without regard to the filing of any Uniform Commercial Code financing statement that purports to perfect a security interest in the mortgage or in a promissory note or other right to payment or performance secured by the mortgage, and the filing of any such financing statement does not constitute notice for the purposes of this section. For the purposes of this subsection, the term "mortgagee of record" means the person named as the mortgagee in the recorded mortgage or, if an assignment of the mortgage has been recorded in accordance with this section, the term "mortgagee of record" means the assignee named in the recorded assignment.

§ 701.02, Fla. Stat. (2008).

### Conflicting Case Law

*Rothenberg* involved a mortgagee-lender who assigned a note and mortgage to American Bank, delivering to the bank the original promissory note as collateral for a line of credit. 598 So. 2d at 289. Prior to American Bank recording an assignment, Rothenberg purchased the note and mortgage from the mortgagee and recorded an assignment of mortgage. *Id.* at 289-90. Rothenberg did not, however, take possession of the note.

The *Rothenberg* parties framed their priority arguments around the application of section 701.02. *Id.* at 290. Ultimately, the Fifth District resolved the matter in American Bank's favor, but not based on section 701.02. The court concluded that the section did not apply to successive assignments of a note and mortgage:

> The confusion in this case arises from the failure of both parties to recognize that section 701.02 . . . is inapplicable. This case, involving as it does the competing interests of successive assignees of a note and mortgage, is governed by

negotiable instruments law, not the recording statute. Section 701.02 was enacted to protect a creditor or subsequent purchaser of land who has relied on the record satisfaction of a prior mortgage, which satisfaction was executed by the mortgagee after he made an unrecorded assignment of the same mortgage. *Manufacturers' Trust Co. v. People's Holding Co.*, 110 Fla. 451, 149 So. 5 (1933). See Rogers, *Chapter 20,954, Acts of 1941 (Dealing with Real Property)*, 15 Fla. L.J. 276 (Oct. 1941). Nothing in the statute makes it applicable to successive assignees of mortgages and we decline to so extend it.

*Id.* (footnote omitted). With section 701.02 cast aside, the court applied Chapter 673 of Florida's Uniform Commercial Code to hold American Bank's interest superior to Rothenberg's by virtue of its status "as possessor of a valid assignment of mortgage and holder in due course of the original note." *Id.* at 291.

Seventeen years later, in *JP Morgan Chase*, the second district confronted section 701.02's application to successive assignees of the same mortgage, albeit under a vastly different fact pattern. In that case, the mortgagee-lender, AmSouth, assigned the borrower's two mortgages to JP Morgan, but the bank failed to record the assignments. 6 So. 3d at 683. Years later, the borrower entered into an agreement to sell the property to New Millennial. *Id.* In the process of obtaining title insurance, New Millennial's closing agent contacted AmSouth after a title search revealed two recorded mortgages on the property. *Id.* Following a phone conversation, an unidentified AmSouth representative told New Millennial that the "loans were paid off" and later faxed to the closing agent two computer screen printouts indicating the payoff. *Id.* Thereafter, when New Millennial failed to pay and JP Morgan instituted foreclosure proceedings, New Millennial argued section 701.02 rendered JP Morgan's notes and mortgages ineffective and unenforceable against it because JP Morgan failed to record its mortgage assignments. *Id.*

The second district ruled in favor of JP Morgan on the grounds that New Millennial had "actual knowledge" that the two recorded mortgages existed and had not been satisfied. *Id.* at 686. However, in reaching this result, the court interpreted section 701.02(1) as applying "**only** . . . to estop an earlier purchaser/assignee of a *mortgagee*—the person or entity that loaned the money involved in the mortgage and obtained a security interest on the piece of property—from **claiming priority in the same mortgage chain** as against a subsequent assignee of the same mortgage when the earlier *mortgagee* fails to record the earlier assignment of the mortgage." *Id.* at 685 (emphasis added). As illustration, the court used

the following example:  "[I]f the original mortgagee assigns the mortgage to Entity A and Entity A fails to record that assignment, Entity A cannot claim priority over a latter assignee of the same mortgage (Entity B)."  *Id.*

While *JP Morgan Chase* did not acknowledge *Rothenberg*, its characterization of section 701.02 is directly at odds with the fifth district—the former standing for the proposition that section 701.02 applies *only* to competing interests of successive assignees, and the latter concluding that it does not apply at all.

*Both the Plain Language of Section 701.02(1) and the 2005 Amendment Contained in Section 701.02(4) Demonstrate that the Statute Does Not Apply to Determine Priority Between the Mortgage Assignments in this Case*

In 1828, Florida enacted its first recording statute, which, at the time, provided in relevant part:

> That no conveyance, transfer or mortgage of real property, or of any interest therein, shall be good or effectual in law, or in equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same shall be recorded in the office assigned by law for that purpose . . . .

Act Nov. 15, 1828 §§ 4, 9.[3]  The general recording statute's current iteration, codified within section 695.01, Florida Statutes (2008), largely preserves the original's wording and force.[4]

---

[3]An electronic version of the 1828 Act is available through the State Archives' website at: https://archive.org/stream/actsofle1828flor#page/156/mode/2up.

[4]Section 695.01, Florida Statutes (2008), provides in relevant part:

> No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; nor shall any such instrument made or executed by virtue of any power of attorney be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice unless the power of attorney be recorded before the accruing of the right of such creditor or subsequent purchaser.

While the 1828 act referenced "conveyances," "transfers," and "mortgages," it did not include the term "mortgage assignments." Some state courts confronting similar wording construed their recording statutes to include mortgage assignments. *See, e.g., Gray v. Delpho*, 162 N.Y.S. 194, 198 (N.Y. Sup. Ct. 1916) ("A mortgage is held to be a conveyance and an assignee thereof a purchaser within the meaning of this statute."); *Second Nat'l Bank v. Dyer*, 184 A. 386, 388 (Conn. 1936). Florida, however, did not, as the Supreme Court construed "assignment[s] of a mortgage lien [a]s not [being] 'a conveyance' or a 'transfer' of 'any interest' in land covered by the mortgage." *Garrett v. Fernauld*, 57 So. 671, 672 (Fla. 1912).

Three years after *Garrett*, the Florida Legislature enacted section 701.02.[5] Although there is no legislative history from that time period, Justice Stephen Grimes—while a student at the University of Florida Law School—explained in a 1954 case note that "the statute was apparently passed to protect purchasers of the land in situations in which the mortgagee makes a fraudulent satisfaction of the mortgage subsequent to an unrecorded assignment."[6] Stephen H. Grimes, *Mortgages: Effect of Failure to Record a Mortgage Assignment in Florida*, 7 U. Fla. L. Rev. 93, 97 (1954). The fifth district relied upon Justice Grimes' note to reach its conclusion in *Rothenberg*. 598 So. 2d at 290 n.2.

Justice Grimes' note casts doubt on the statute's applicability to assignees of the same note and mortgage, unless courts "construe[d] the terms 'creditors or subsequent purchasers' to include an assignee." Grimes, *supra*, at 96. As quoted in *Rothenberg*, Justice Grimes expressed

---

§ 695.01(1), Fla. Stat. (2008).

[5]As enacted in 1915, the statute provided: "No assignment of a mortgage upon real property or of any interest therein, shall be good or effectual in law or equity, against creditors or subsequent purchasers, for a valuable consideration, and without notice, unless the same be recorded according to law." Laws 1915, c. 6909, § 1.

[6]For example, Justice Grimes posited a hypothetical scenario wherein a mortgagee (1) assigns a mortgage to a third party who fails to record and (2) then files a satisfaction. Thereafter, a prudent purchaser looking to the real estate records would see only a satisfaction of the prior mortgage, leading one to believe the property to be free and clear of encumbrances. Application of section 701.02 would stave off the inequitable result of an unaware purchaser being burdened with the absent mortgage assignment.

three concerns for concluding that section 701.02 does not apply to successive assignments of the same debt and mortgage:

> First, the statute by its express terms applies only to "creditors or subsequent purchasers." The failure of the Legislature to include successive assignees among those protected by the statute is certainly some indication of an intent to exclude them from its operation. Second, to apply the statute to successive assignments of the same debt and mortgage may result in a separation of the debt and the security. Such a result is patently undesirable. The holder of the mortgage unaccompanied by the debt has no enforceable right against the mortgagor. The mortgage, in such a situation, is a meaningless piece of paper. On the other hand, the holder of the debt alone has no security upon which he can depend for satisfaction thereof. In either case, the mortgagor receives an undeserved windfall. Finally, the statute was apparently passed to protect purchasers of the land in situations in which the mortgagee makes a fraudulent satisfaction of the mortgage subsequent to an unrecorded assignment. The problem of the priority of successive assignees of the same note and mortgage was not then before the Legislature.

598 So. 2d at 290 n.2 (quoting Grimes, *supra*, at 97); *accord Matter of Ascot Mortg., Inc.,* 153 B.R. 1002, 1010 (Bankr. N.D. Ga. 1993).[7]

---

[7]The bankruptcy court in *Matter of Ascot* agreed with the Grimes/*Rothenberg* approach to section 701.02, stating:

> [T]he Florida recording statute, in common with those of many other jurisdictions, extends protection only to subsequent purchasers for value and mortgagees and other lien claimants against the underlying land (i.e., those operating in the mortgagor's world). They do not apply to those operating in the mortgagee's world.

> Where the matter has been carefully considered, the courts have recognized that the recording acts, if they apply at all, apply only as between the assignee or other claimant in the mortgage and the owner of the underlying land or those who claim through him; they do not apply as between competing assignees or successive claimants in the mortgage.

We agree with the Grimes/*Rothenberg* view that section 701.02 was designed to confront issues pertaining to real property. *See* David E. Peterson, *Cracking the Mortgage Assignment Shell Game*, 85 Fla. B.J. 10, 15-17 (Nov. 2011). As Justice Grimes observed, section 701.02(1) requires recording to make an assignment of a mortgage "good or effectual" against "creditors or subsequent purchasers"; however, the statute omits any reference to "subsequent assignees." In a statute dealing with assignments, had the Legislature intended to treat subsequent assignees the same as "creditors or subsequent purchasers," it would have said so.

Any doubt that section 701.02 does not apply to the assignment of a mortgage was laid to rest in 2005 when the Legislature added section 701.02(4). That subsection provides that "[n]otwithstanding" subsections 701.02(1)-(3) "governing the assignment of mortgages,"

> chapters 670-680 of the Uniform Commercial Code of this state govern the attachment and perfection of a security interest in a mortgage upon real property and in a promissory note or other right to payment or performance secured by that mortgage. The assignment of such a mortgage need not be recorded under this section for purposes of attachment or perfection of a security interest in the mortgage under the Uniform Commercial Code.

The section establishes that it is the Uniform Commercial Code, and not recording pursuant to section 701.02, that determines "attachment and perfection" of a security interest in a note and mortgage. As discussed above, the Code provides that earlier "perfection" gives a secured party priority over latecomers.

Legislative history of the 2005 amendment supports the notion that it is the Uniform Commercial Code that determines priority of mortgage assignments and not section 701.02. The staff analysis explained its purpose as deriving from the concerns of warehousing banks[8] dealing in

---

153 B.R. at 1010 (quoting Jan Z. Krasnowiecki, *et al.*, *The Kennedy Mortgage Co. Bankruptcy Case: New Light Shed on the Position of Mortgage Warehousing Banks*, 56 Am. Bankr. L.J. 325, 336 (1982)).

[8]According to the staff analysis:

> Mortgage warehousing is a process in which a warehousing bank provides financing to mortgage lenders to issue mortgage loans. The financing from the warehousing bank to the mortgage lender is

large volumes of mortgages that they would not "be secure in the underlying mortgages without having to record the assignment of the security interest and incur the costs of recording." Fla. S. Justice Approp. Comm., S.B. 370 (2005) Staff Analysis 4 (Apr. 4, 2005). The source of the banks' uneasiness derived from *Rucker v. State Exchange Bank*, 355 So. 2d 171, 174 (Fla. 1st DCA 1978), which held that "the assignment of a real estate mortgage securing a promissory note as collateral for a bank loan is not a secured transaction under Article 9" of the UCC. Some in the mortgage-servicing industry interpreted *Rucker* as potentially standing "for the proposition that the assignment of a security interest in a mortgage or the assignment of a mortgage must be recorded in order to perfect the security interest in the mortgage." *Id.* at 5.

The staff analysis explained the bill sought to debunk this myth, stating:

> Article 9 of the [UCC], which is codified as ch. 679, F.S., was revised since *Rucker* to clearly indicate that the assignment of a mortgage securing a promissory note *is* a secured transaction. Under s. 679.3131, F.S., one perfects a security interest in a real estate mortgage by possession of the promissory note. Alternatively the secured party can be perfected through filing under s. 679.3121, F.S. . . . The act of recording an interest in a mortgage is costly to the mortgage lending industry in terms of time and money. As a result, many assignments of an interest in Florida mortgages are not recorded. These unrecorded mortgage assignments are viewed by warehousing banks as having more risk than recorded assignments. Florida borrowers may pay for the increased risk borne by warehousing banks through higher borrowing costs.

*Id.* (footnotes omitted). The staff analysis echoes the same concerns voiced by White and Summers in footnote 2, above.

In sum, the Legislature added subsection (4) to eliminate any "ambiguity as to **whether assignments of security interests in mortgages must be recorded to be secured**" by "clarify[ing] that the

---

> secured by a security interest in the underlying mortgages. The funds are advanced to the mortgage lender for a temporary period of time to allow the mortgage to be sold to a permanent investor.

Fla. S. Justice Approp. Comm., S.B. 370 (2005), Staff Analysis 4 (Apr. 4, 2005).

[UCC] governs whether an assignment of a security interest in a mortgage has perfected or attached to the mortgage." *Id.* at 7-8 (emphasis added).

Finally, the inapplicability of section 702.01 to determine priority between competing mortgage assignments is supported by Uniform Commercial Code Comment 7 to section 679.1091. Comment 7 provides that it follows from subsection 679.1091(2)[9]

> that an attempt to obtain or perfect a security interest in a secured obligation by complying with non-Article 9 law, as by an assignment of record of a real-property mortgage, would be ineffective. Finally, it is implicit from [subsection (2)] that one cannot obtain a security interest in a lien, such as a mortgage on real property, that is not also coupled with an equally effective security interest in the secured obligation.

Because section 702.01 does not apply as between HSBC and LaSalle Bank, HSBC's earlier perfection of its security interest in a note arising from the Perez-FGMC transaction establishes its priority over LaSalle. We therefore reverse the final judgment and remand to the circuit court for the entry of a final judgment in favor of HSBC.

WARNER and FORST, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

---

[9]Subsection 679.1091(2) states:

> The application of this chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this chapter does not apply.